**UNITED STATES of America,.
Plaintiff-Appellee,**

v.

**Robert Barker WILKINS, Defendant-
Appellant.**

**No. 15600.**

United States Court of Appeals
Sixth Circuit.

Aug. 5, 1964.

William E. Harvey, Cincinnati, Ohio (Court appointed), for appellant.

Wayne J. Carroll, Asst. U. S. Atty., Louisville, Ky., for appellee, William E. Scent, U. S. Atty., Louisville, Ky., on the brief.

Before MILLER and CECIL, Circuit Judges, and FOX, District Judge.

FOX, District Judge.

Appellant Robert Barker Wilkins and his co-defendant, Charles Edsel Gidcomb, were convicted on their plea of guilty to a count of bank robbery, Title 18 U.S.C. § 2113(d), which occurred on December 12, 1960, in the Planters Bank at Trenton, Kentucky.

The case is before this court on an appeal from a District Court order denying defendant's "motion to vacate and set aside the sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure and Title 28 USC 2255." The motion was filed on July 1, 1963.

Appellant contended that at the time of the arraignment his attorney raised the question of his sanity and specifically requested a psychiatric examination. He also alleged that his counsel informed the court that appellant was hospitalized at Chattanooga, Tennessee, and that the court was aware of an attempted suicide by the appellant.

The motion incorrectly states what occurred on May 15 and May 17, 1961, the dates of arraignment. Defendant's attorney did not move the court for a psychiatric examination under § 4244. The only pre-trial motion before the court was one for a continuance.

The colloquy between the appellant Wilkins' attorney, Mr. Leland H. Logan, the District Judge and Mr. William B. Jones, United States Attorney, and this court's comments are set forth in footnote one.[1]

1. The case was called for arraignment on the return date of the indictment, May 15, 1961. The defendants appeared with their counsel, Leland H. Logan, of Bowling Green, Kentucky. At that time Mr. Logan advised the court:

"* * * why to my mind and what I can find, with regard to Mr. Wilkins here, there is some question in my mind as to whether or not they were legally responsible and knew the consequences of their acts at the time it is supposed to have happened. I say that for this reason, that he himself has never been in a courtroom in his life (sic) for any reason at all and I do feel that by some form of psychiatric examination, that we could at least clear this matter up and, as Your Honor knows, a competent, first-class psychiatrist is hard to obtain, it cannot be done on one day's notice, and in addition to that fact, the local physician here, Doctor William McCormick, has given me a short statement in which— well, I would rather your Honor just read it (handing document to the Court.)"

"THE COURT: I don't think that statement, Mr. Logan—if you want to put it in the record you may—I don't think it would have anything to do with this particular motion for continuance.

"MR. LOGAN: I have no desire to

The defendants were arraigned and entered a plea of not guilty. The court asked each of the defendants whether he understood the charge against him, and each answered "Yes." The Court entered a plea of not guilty for each defendant, and both the District Attorney, Mr. Jones, and defense counsel, Mr. Logan, announced that they were ready for trial.

The case went to trial on the following day, May 18, 1961.

The case commenced at ten o'clock in the morning; the jury was impaneled, the Government made its opening statement, the defense reserving its opening statement, and two witnesses testified for the Government, Mallie C. Taylor and Sue Payne Bransford.

The case continued until noon and was recessed until 1:15, when defense counsel, Mr. Logan, moved to withdraw the plea of not guilty and enter a plea of guilty to the charges for each of the defendants. The court then questioned the defendants as to whether they desired to withdraw their plea of not guilty and enter a plea of guilty. Both of the defendants responded "Yes," and both stating that they had read the indictment, specifically entered a plea of guilty.

The Court then asked the attorneys if they had anything to say before sentence was pronounced. A pre-sentence report on each of the defendants was given to the Court by the probation officer.

Mr. Logan made a plea for leniency for each of the defendants. As to Mr. Wilkins, he stated in particular that he had a good record, was regularly employed, and had served in the Navy in the South Pacific. Mr. Logan stated that on the morning of the day of the robbery, however, Wilkins, together with his co-defendant, had consumed about two and a half to three and a half pints of liquor. Each of the defendants was asked if he desired to make a statement. Defendant Wilkins' statement was as follows:

"I understand the graveness of this mistake I made and I have made place this in the record because that is another question on which I am not fully informed and—

"THE COURT: Well, it has nothing to do with his mental state nor does it have anything to do with—a condition of his feet there that should be given intensive treatment—but he does not say that he is not capable of being tried.

"MR. LOGAN: Under the circumstances that is all I will offer in a formal motion for a continuance.

"MR. JONES: I might for the record, if the Court please, make one statement. These defendants have been at liberty since December 12th and have had sufficient time to prepare their defense. They knew it was coming and knew it was coming at this time.

"THE COURT: I am of the opinion that no showing has been made here to justify the Court to continue this case. It has been nearly six months. These matters are serious both to them and to the United States.

"MR. LOGAN: I agree with that.

"THE COURT: And it shouldn't go over. While the indictment is only recently returned, it has been pending, they have been before the commission-er, and they know the nature of the charge. There is nothing that they are not fully advised of and have been for many months. Now, the Court feels that on the present showing it would have to overrule your motion for a continuance.

"MR. LOGAN: May I say this one more word? I don't like to take time of the Court.

"THE COURT: No, that is what the Court is for.

"MR. LOGAN: Now, the Commissioner's record in this case was before Clarksville, as I understand, in Tennessee. Those same papers were later sent to Louisville and there was some delay in getting them back here to Bowling Green. Now, then, this man has been in the hospital in Chattanooga, Tennessee, and those records have not been made available.

"THE COURT: Well, I suppose the only record there would be as far as the Commissioner's papers were concerned if they were brought before the Commissioner and either had a formal hearing or waived—

"MR. LOGAN: It was waived."
(Tr. 4-7)

in this 46 years and I am sure if and when given an opportunity to society again that it will never happen again and what I have done will follow me the rest of my life in my knowledge." [2]

The Court sentenced each of the men to twenty years on the second count and the first count was nolle prossed.

At no time between the appearance before the Commissioner and the sentence did defendant Wilkins or his attorney make a motion for psychiatric examination. Mr. Logan, appellant's counsel, in presenting his motion for a continuance, did state that he felt that by some form of psychiatric examination the sudden deviation from a normal course of good conduct could be cleared up.

Later, on June 20, 1961, Robert Barker Wilkins, through his attorney, Leland H. Logan, filed a motion for reduction of sentence, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, stating in part that prior to the sentencing by the court, the defendant's attorney had submitted a statement from Dr. William R. McCormick, of Bowling Green, Kentucky, which showed that appellant was suffering from Reynauds' Disease, the effect of which can and often does bring about the death of the patient. There was no mention made in the motion, either about mental incompetency, or that the appellant did not understand the nature of the charge against him, or could not assist counsel in preparation and defense in the case.

This motion was heard on July 10, and testimony was taken as to the physical condition of Robert Barker Wilkins. The court denied this motion by an order made on July 10, 1961 and entered July 11, 1961.

Thereafter, on May 25, 1962, defendant filed his *first* motion under Section 2255, Title 28 U.S.C. for leave to file a petition to vacate sentence and leave to file and to proceed in forma pauperis.

This motion raised three questions: (1) whether or not the sentence should be vacated since he was insane before, during and after the sentence; (2) whether or not the sentencing court improperly denied petitioner's request for a psychiatric examination, and if so, whether *nunc pro tunc* determination of his mental competency should be made; and (3) whether or not the petitioner was entitled to a hearing conducted in open court, and opportunity to submit testimony and other evidence upon his averments of facts.

The court in a two and a half page memorandum dated October 10, 1962, and entered October 11, 1962, denied the defendant's motion. The court found that a period of five months elapsed from the commission of the crime until the charge was made by the grand jury, and that the defendants appeared with their counsel and to all appearances were normal and fully aware of the proceedings. They were represented by experienced and competent counsel, who announced he was ready for trial, and after the trial had progressed, defendants moved to withdraw their plea of not guilty and enter a plea of guilty. The significance and import of this step were fully discussed, and before sentence was imposed they were given an opportunity, and their counsel was given an opportunity, to make statements to the court. The court further found that defendant's motion filed June 20, 1961, made no representation or suggestion that Robert Barker Wilkins was suffering from any mental disorder, and the court concluded that this was approximately seven weeks after the trial, and after the defendant had been committed to a Federal Penitentiary, where observation would naturally be made by the prison personnel.

The Court denied the motion.

On July 1, 1963, appellant Robert Barker Wilkins filed his *second* motion under Section 2255, Title 28 U.S.C., and Rule 35 of the Federal Rules of Criminal Procedure, to vacate and set aside the

2. Tr. pages 36, 37.

sentence. Among other things, he alleged that on Page 4 of the Transcript of Plea, Arraignment and Disposition, counsel for the defendant raised the question of sanity, and specifically requested a psychiatric examination of defendant Wilkins; that at Page 6 of the record, counsel informed the Court that defendant Wilkins was hospitalized at Chattanooga, Tennessee;[3] that the court was aware of the attempted suicide by the defendant; and finally that the present report included both the fact of his irrational behavior, and medical reports stating the movant was an alcoholic. A pyschiatric examination and hearing were requested.

The motion incorrectly states what occurred on May 15 and May 17, 1961. Respondent's attorney did not move the court for a psychiatric examination under § 4244. The only pre-trial motion before the court was for a continuance.

The District Judge in a memorandum dated July 11, and entered July 13, 1963, denied appellant's *second* motion made on July 1, 1963, pointing out that Section 2255, Title 28, "expressly provides that the sentencing court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner." The court also pointed out that there was "no new theory for the second motion."

On August 1, 1963, appellant petitioned for permission to file notice of appeal and leave to proceed in forma pauperis, which petition was granted by an order dated and entered on September 12, 1963.

The case is presently before this Court on the petition of August 1, 1963.

Diligent, appointed counsel asserted many reasons for reversal of the District Court's order of July 11, 1963.

■ Under Title 18 U.S.C. § 4244, the general rule is that in every case when a motion is filed which sets forth grounds that constitute reasonable cause to believe that the defendant "may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense," Lebron v. United States (1955), 97 U.S.App.D.C. 133, 229 F.2d 16, 18, it is then mandatory for the District Court to have the defendant examined as to his mental condition by a qualified psychiatrist who is to report back to the court. Krupnick v. United States (CCA 8, 1959) 264 F.2d 213; United States v. Walker (CCA 6, 1962) 301 F.2d 211; Kenner v. United States (CCA 8, 1960) 286 F.2d 208.

3. "THE BARONESS ERLANGER HOSPITAL
Chattanooga, Tennessee.
NAME OF PATIENT: Wilkins, Mr. Robert B. ADDRESS: 538 Belmont Drive, Bowling Green, Kentucky.
ADMISSION DATE: 3–29–61 DISCHARGE DATE: 3–31–61.
CHIEF COMPLAINT: Patient admitted with palpations (sic) and shortness of breath.
FINAL DIAGNOSIS: Auricular fibrillation. Possible right femoral embolus. Patient left against medical advice.
OPERATIONS: None. Date:
LABORATORY: 1. Auricular fibrillation, fine.
EKG Report: 2. No axis shift.
3–28–61 3. Definitely abnormal record.
PAST HISTORY: Admitted 4/1/61. Discharged 4/4/61. Diagnosis: Chronic alcoholism. Arteriosclerosis. Patient signed out.
TAKEN FROM July 3, 1961.
RECORDS ON:

Signed by: Jean C. Lee
————————————————————————
JEAN C. LEE, R.R.L.
MEDICAL RECORDS DEPARTMENT"

(Defendant's Exhibit 1 in the hearing in the District Court: this record relates only to chronic alcoholism and arteriosclerosis.)

When, however, the motion does not set forth grounds for reasonable cause to believe that the defendant may be insane or mentally incompetent, or when the motion appears with reasonable certainty to be frivolous, or made in bad faith, see Shelton v. United States (CCA 5, 1953), 205 F.2d 806, 815; Lebron v. United States, supra; and Behrens v. United States (CCA 7, 1962), 312 F.2d 223, 225, the motion can be denied.

The present case is more in accord with Lebron v. United States, supra, where four Puerto Ricans, members of an anti-American party on the Island of Puerto Rico, planned a visit to the Capitol in Washington, and demonstrated for Puerto Rican independence by shooting at members of Congress.

While two hundred forty-three Congressmen were engaged in voting on the floor of the House, they shot into the well of the House and five Congressmen were wounded. They were indicted and went to trial. The trial judge was charged with error in refusing to respond to associate defense counsel's statement made at the close of defendant's evidence, to appoint a psychiatrist and proceed under § 4244. The defense counsel's statement was:

"If your Honor please, at this time it has occurred to us as counsel for these people, for these defendants, there is probably something mentally wrong with them.

"We are asking the Court at this time to have these people examined by psychiatrists other than those who Mr. Rover (the United States Attorney) had examine them. Because of the conversation, the testimony on the witness stand, and what the testimony was, their lack of remorse, their peculiar attitude towards this entire situation, that I am firmly convinced there is a strong probability that these people are mentally unstable."

District Judge Alexander Holtzoff was affirmed, in an opinion by Judge Wilbur K. Miller. The Circuit Court held that the grounds stated by the movant were slight and of little weight or importance, and thus were frivolous.

"It set forth no particulars and can be characterized as a statement of vague impressions."

Previously in the case the Circuit Judge stated:

"The motion in this case, quoted above, fell short of meeting the statutory requirements as to the belief of the movant concerning the mental condition of the accused."

Counsel did not say he had reason to believe that petitioner "may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or assist in his own defense." He merely stated that "it has occurred to us * * * there is strong probability there is something mentally wrong with them, and I am firmly convinced that there is a strong probability these people are mentally unstable."

The Court held:

"We do not mean to say a motion under § 4244 must be couched in the exact language of the statute; but it is insufficient unless its recital approximates the meaning of the statutory language. Cf. Perry v. United States, 1952, 90 U.S.App. D.C. 186, 195 F.2d 37."

In the instant case, defendant's attorney, Mr. Logan, did not make a motion under Section 4244; on the contrary, he moved for a continuance and his motion sounded more in the nature of a request for a continuance to investigate as to whether or not the defendants, particularly appellant, would have a defense of insanity in the trial itself.

The contents of Mr. Logan's oral motion on May 17, 1961, fell short of the statutory requirements, first, because it in fact was not a motion for appointment of a psychiatrist by the court, and secondly, because it did not state particulars upon which it could reasonably be concluded that Wilkins was presently insane, or otherwise so mentally incom-

**704**

petent as to be unable to understand the proceedings against him, or to assist in his own defense.

On the contrary, the record discloses that appellant and his co-defendant each stated that they knew the nature of the charge made against them, had read the indictment, and that the defendants themselves later desired to change the plea from not guilty to guilty, this decision having been made during the course of the trial.

After the plea of guilty and before sentencing, the attorney for defendant Wilkins and each defendant made a statement to the Court. Upon the record in this case, the District Judge was not in error in denying the post-trial motions. Defendants' guilt was clear, and defendant Wilkins' conviction must stand.

Affirmed.