**Alex J. BOTTOS, Jr., Plaintiff,**

v.

**George N. BEAMER and J. Frank Kimbrough, Defendants.**

**No. 73 H 193.**

United States District Court,
N. D. Indiana,
Hammond Division.

Nov. 16, 1973.

Alex J. Bottos, Jr., pro se.

Joseph S. Van Bokkelen, Asst. U.S. Atty., Hammond, Ind., for defendants.

## MEMORANDUM OPINION and JUDGMENT ORDER

AUSTIN, District Judge, Sitting by Designation.

In this *pro se* civil action, Plaintiff Bottos seeks $1,000,000 in damages from United States District Judge George N. Beamer and Assistant United States Attorney J. Frank Kimbrough, both of the Northern District of Indiana. In broad outline, Bottos alleges that Beamer and Kimbrough tortiously interfered with his rights by harassing and imprisoning him without authority or jurisdiction.

■■ This suit was initiated on July 20, 1973 in the Lake County, Indiana, Superior Court. On August 6, 1973, Defendants successfully removed to the Northern District of Indiana.[1] Because of the nature of the allegations and the offices of the named parties, the Judges of the Northern District of Indiana disqualified themselves from service as to this case. By order of Chief Judge Swygert of the Court of Appeals for the Seventh Circuit, I was designated and assigned as presiding judge. *See* 28 U.S.C. § 292(b).

■ Throughout these proceedings, Bottos has demanded that this action be transferred from the Seventh Circuit because of judicial prejudice against him here. No persuasive arguments or facts have been presented to support this broad allegation. Indeed, Plaintiff cites no statutory or case precedent in which such an unusual transfer was granted. Bottos exercised his rights by bringing this lawsuit in the Lake County Court. Beamer and Kimbrough properly removed to federal court. To avoid any appearance of impropriety, a Judge unassociated with the District and the parties was assigned to hear the matter and to determine the merits. On these facts, Plaintiff's conclusory and unsupported allegations must be rejected.

## I. *FACTS*

According to the pleadings, Bottos, a management consultant, is compiling data which, he claims, illustrates a pat-

---

1. Removal does not constitute, as Plaintiff contends, a waiver of subject-matter jurisdiction or an admission of the propriety of a particular claim. In cases like this, federal officials possess an absolute and unquestionable right of removal under 28 U.S.C. § 1442. *See Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) ; *Goldfarb v. Muller*, 181 F.Supp. 41 (D.N.J. 1959). Use of this right entitles such defendants to have the claims at issue, however proper or infirm they may be, heard before a federal district judge. No authority to the contrary has been cited by the parties or found by the Court.

tern of official corruption in the State of Indiana. He alleges that he has uncovered serious criminal violations on the part of various State and Federal officials. Armed with this material, Plaintiff seeks to conclusively establish that Northeast Indiana is the national headquarters of the "crime syndicate."

In an attempt to thwart these activities, certain individuals, not named herein as defendants, allegedly conspired to lodge fraudulent and baseless charges against Plaintiff. Although the complaint does not so state, a three-count indictment was returned on June 29, 1973 charging Bottos with impersonating a federal officer in violation of 18 U.S.C. § 912. *See United States v. Bottos,* 72 H Cr 83.

In the process of trial preparation in that case, Plaintiff and his attorney developed a serious disagreement and parted ways. Apparently, Bottos has filed a malpractice action against the attorney for certain improprieties involved in defending the criminal case. In any event, although he was offered court-appointed counsel, Plaintiff refused and represented himself at all times thereafter.

On March 5, 1973, Plaintiff appeared *pro se* before Defendant Beamer on two motions pertinent to the criminal charges. First, Plaintiff sought to transfer the proceedings out of the Seventh Circuit because of alleged judicial bias against him in this area. For the same reasons articulated in this opinion, that motion was denied. Second, United States Assistant Attorney Andrew Baker presented a Motion for Psychiatric Examination of Bottos pursuant to 18 U.S.C. § 4244.[2] Plaintiff was served

with copy on March 1, 1973 and responded both orally and in writing. In the motion, Assistant Baker listed ten grounds supporting his brief that Bottos "may be presently insane or otherwise so mentally incompetent to properly assist in his own defense." Baker further verified his belief that Plaintiff "may be suffering from extreme paranoia, delusions, and unable to separate truth from fiction." After oral argument, Defendant Beamer granted the Government's request and ordered Plaintiff to the custody of the United States Marshal for transfer to the Federal Medical Center for evaluation and report.

Plaintiff states that he was humiliated and disgraced by being placed in chains and treated as a criminal. He alleges that he was committed to the Porter County Jail for 5 days, transferred to an unidentified county jail in downstate Illinois, and confined at the Federal Medical Center for 40 days. Throughout this period of time, Bottos claims that he was subjected to various indignities and treated improperly.

Defendant Kimbrough's relationship to the case is based on two theories. First, Plaintiff states that he supplied Kimbrough with information concerning illegal activities in Northern Indiana. Rather than acting positively upon this evidence, Kimbrough is said to have attempted to pressure individuals to discredit Bottos. After the impersonation charges were brought against Plaintiff, Kimbrough allegedly ordered Assistant Baker to bring the § 4244 motion as part of the alleged continuing scheme of harassment. Second, Plaintiff charges that Kimbrough attempted to influence

2. Whenever after arrest and prior to the imposition of sentence . . . the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in

which proceedings are pending. Upon such a motion . . . the Court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist . . . . For the purpose of the examination the court may order the accused committed to such a reasonable period as the Court may determine to a suitable hospital or other facility to be designated by the court. . . .

officials at the Medical Center to keep Bottos confined indefinitely.

Defendant Beamer's relationship to the case is also based upon his irreconcilable bias against Plaintiff. This allegation is supported by two specific statements by Plaintiff. First, Plaintiff claims that Defendant Beamer assisted Defendant Kimbrough in pressuring individuals in order to discredit Bottos. Second, he charges Beamer with stating, in private, that he would sentence Bottos to three years in jail with or without a trial.

## II. ISSUE

On these facts, Plaintiff contends that Defendants, without authority and with full knowledge of the fraudulent and baseless nature of the criminal charges, confined him unlawfully, maliciously, and without probable cause. He further asserts that Defendants caused and acquiesced in the wrongs allegedly committed in route to and at the Federal Medical Center.

Defendants now move to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. See Fed.R.Civ. Pro. 12(b)(1) and 12(b)(6). Defendants maintain that the judicial and prosecutorial immunities inherent in their offices constitute absolute defenses to these charges. I agree.

## III. SUBJECT-MATTER JURISDICTION

■■ Defendants' motion to dismiss for lack of subject-matter jurisdiction must be denied. Defendants apparently misconstrue the concepts underlying the immunization of these officials. The applicability of the immunity is decided on a case-by-case basis. See, e. g., Luttrell v. Douglas, 220 F.Supp. 278 (N.D. Ill.1963); Yates v. Village of Hoffman Estates, 209 F.Supp. 757 (N.D.Ill.1962). In each case, the court must evaluate the questioned activities and ascertain whether they fall within the ambit of protection. In short, while the liability of the individual defendant is constantly

scrutinized, the power and jurisdiction of the courts to hear these claims is not affected by the immunity grant. To hold otherwise would deny plaintiffs their right to a threshold determination of the propriety of their complaints. See Wright and Miller, Federal Practice and Procedure §.1350.

## IV. FAILURE TO STATE A CLAIM

■ A substantial number of Plaintiff's allegations represent claims upon which no relief can be granted against these Defendants. The untenable complaints refer to official misconduct and mistreatment that occurred after Bottos was transferred to the custody of the United States Marshal on March 5, 1973. In particular, Plaintiff asserts that he was chained, disgraced, deprived of food and water, illegally incarcerated in county jails, and abused at the Federal Medical Center. Even assuming that these allegations are true, 2A Moore's Federal Practice § 12.08, and even construing them as liberally as possible, Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), these facts simply do not state grounds for relief and must be stricken from the complaint. See Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Conley v. Gibson, 355 U.S. 41, 42, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957).

These charges relate to a series of intention torts. In addition to the facts recited above, Plaintiff claims that Defendants "caused to be done, permitted, allowed, and condoned, and acquiesced in" these wrongs. Without alleging an active and direct role in these violations, Plaintiff's mere statement of Defendants' liability does not state an actionable claim. Cf. Adams v. Pate, 445 F.2d 105 (7th Cir. 1971); Eaton v. Bibb, 217 F.2d 446 (7th Cir. 1954); Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969); Patrum v. Martin, 292 F.Supp. 370 (W. D.Ky.1968); Jordan v. Kelly, 223 F. Supp. 731 (W.D.Mo.1963). There is no contention that Defendants personally participated in or directed the infliction of injury. There is no allegation that

the United States Marshals and medical officers involved acted in a "master-servant" relationship with the Defendants.

■ While the concept of vicarious liability may apply to intentional torts, *see Note,* 45 Harv.L.Rev. 348 (1932), it is limited to those situations in which a master-servant relationship exists and the tort was committed in the course of employment. Prosser, *Handbook on Torts* § 70 (4th ed. 1971). No facts alleged here can be construed to represent that situation. Plaintiff's claim, if it be meritorious, is properly against the specific individuals who abused him and not against these Defendants.

Because it fails to present any conceivable relationship between these Defendants and the wrongs sustained, these allegations must be dismissed.

## V. *SUMMARY JUDGMENT*

The actionable portions of the complaint concern the Government's motion to compel Plaintiff to submit to the psychiatric examination and Defendant Beamer's order granting that motion.

■ Rule 12(b) provides that a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted may be converted into a Rule 56 motion for summary judgment whenever matters outside the pleadings are presented to and received by the court. Both Plaintiff and Defendants have proferred affidavits and official records in support of their contentions. Since the denomination of a motion is not determinative as to its legal meaning, *Kaufman v. Scanlon,* 245 F.Supp. 352 (S.D.N.Y. 1965), Defendants' motion will be treated as a Rule 56 motion and decided accordingly. *See Carter v. Stanton,* 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972). *See also* C. Clark *The Summary Judgment,* 35 Minn.L.Rev. 567, 575 (1952).

The remaining allegations do not present any genuine issue of material fact. The court transcripts, the motions and objections thereto, and the decisions and orders issued substantiate the facts as presented herein. In short, Plaintiff appeared before Defendant Beamer and was ordered to the examination in Springfield, Missouri pursuant to 18 U.S.C. § 4244. Considering the state of the law, all factual allegations concerning the reasons for the Government's motion and the Judge's actions are immaterial. Accordingly, two legal questions remain: first, whether Defendant Beamer acted within the scope of his judicial authority and, second, whether Assistant Baker, even if he was influenced by Defendant Kimbrough, acted within the "outer perimeters" of his official duties. Both questions must be answered affirmatively.

■ Reviewing the record, it is apparent that Defendant Beamer was performing acts in discharge of his judicial duties as a United States District Judge. Through a long line of definitive cases, courts have held that a judicial officer is immune from liability in civil suits for damages arising from the performance of judicial duties, regardless of personal motivation, wrongful intent, and malice. *See Bradley v. Fisher,* 80 U.S. 335, 20 L.Ed. 646 (1871); *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Skolnick v. Campbell,* 454 F.2d 531 (7th Cir. 1971). *See also Note,* 70 Harv.L.Rev. 829, 833 (1957).

Defendant Beamer acted well within his statutory authority when he ordered the psychiatric examination pursuant to 18 U.S.C. § 4244. Indeed, many cases hold that a District Judge has no discretion to deny a properly-presented § 4244 motion. *See, e. g., Meador v. United States,* 322 F.2d 935 (9th Cir. 1964); *United States v. Wilkins,* 334 F.2d 698 (6th Cir. 1964); *Caster v. United States,* 319 F.2d 850 (5th Cir. 1963), *cert. den.* 376 U.S. 953, 84 S.Ct. 972, 11 L.Ed.2d 973 (1964). Accordingly, Judge Beamer is protected from civil suit by reason of his immunity. His intentions and motivations—no matter how evil, sinis-

ter, or diabolical they may be—are irrelevant. *See, e. g., Norton v. McShane,* 332 F.2d 855 (5th Cir. 1964), *cert. den.,* 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965).

 Identical principles apply to Defendant Kimbrough. *See Barr, supra; Pierson, supra.* Governmental officers of this type are immune from suit if the questioned activities are within the "outer perimeters" of their duties. *See Norton, supra; Babylon Milk and Cream Co. v. Rosenbush,* 233 F.Supp. 735 (E.D.N.Y.1964). For the law in this Circuit, see *Skolnick v. Hanrahan,* 398 F.2d 27 (7th Cir. 1968). The grounds presented for the § 4244 motion, set forth in the appendix, constitute reasonable cause for the beliefs stated therein. It is irrelevant whether Assistant Baker was controlled or ordered by Defendant Kimbrough. Baker complied with the statutory requirements and, therefore, acted within the "outer perimeters" of his official authority. For that reason, his motivation cannot be questioned.

## VI. *JUDGMENT ORDER*

For the reasons stated herein, Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied. Those allegations in the complaint that refer to activities occurring after Plaintiff was transferred to the custody of the United States Marshal on March 5, 1973 fail to state a claim upon which relief can be granted. As for the remaining allegations, summary judgment is granted in favor of Defendants.

So ordered. Case dismissed.

## APPENDIX

1. On January 2, 1965, Defendant suffered an extremely traumatic experience in that a fire in his residence at 409 East 48th Street, Indianapolis, Indiana, caused the death of his three young children, injured himself and his wife. He and his wife subsequently were divorced.

2. That Defendant Alex J. Bottos, Jr. has gone to various state and Federal law enforcement officers in the area alleging conspiracy by organized crime elements and others to do him in. When any of these offices refused to take immediate action on hazy, incomplete and inconclusive information furnished, Defendant Bottos has appeared before another law enforcement officer alleging complicity in the conspiracy against him by the previously contacted agency.

3. That when the instant charges were made against the Defendant, he reported that some of the law enforcement officers investigating the case were in collusion with the criminal conspiracy against him and made charges that were proven completely false. In one instance, he indicated the one officer had received a particular car as a pay-off which he then used as his own automobile. Investigation conclusively established that that officer had never been in the possession of such an automobile.

4. Somewhere between September 26, 1972, and September 27, 1972, there was a fire of suspicious origin at Defendant's farmhouse on Route 1, Chalmers, Indiana. When state investigators contacted him with respect to this fire, the Defendant stated, "Oh my God, they tried to kill me again."

5. That in his own Motion to Remove Travel Restrictions on his bond filed on January 11, 1973, he alleges in paragraph 3 that his personal safety is and has been in danger in this district.

6. Defendant drives an automobile registered in Florida which is registered to a fictitious address.

7. When Defendant appeared in Court to seek removal of the travel restrictions on his bond he alleged that he had built up business contacts for which he had to travel extensively in over 20 states. However, in a letter written to the Federal Bureau of Investigation subsequent to his arrest while he was on bond in which his travel restrictions were limited to this District, he stated that his business took him to 15 states.

8. In the indictment in this case the Defendant is charged with falsely impersonating a Federal Agent to three different people. When he appeared before this Court on his counsel's motion for leave to withdraw, he stated that this was a very complex case. However, after so saying, he indicated he intended to represent himself.

9. On various occasions Defendant has reported that he has a Master's Degree in Business. A check with Loyola University reveals that he has never, in fact, completed the requirements for that degree.

10. The undersigned Assistant United States Attorney has talked to a number of law enforcement officials to whom Bottos has come with his tale of a great criminal conspiracy against him and they are unanimously of the opinion that Defendant is suffering from a severe mental disorder.