In the Matter of Criminal Proceedings against Theodore J. HEISIG and Edward A. Cass (Criminal Action No. 59-2322).

In the Matter of Criminal Proceedings against John Joseph GENARELLA (Criminal Action No. 59-2322).

Nos. 59 C 1515, 59 C 1519.

United States District Court
N. D. Illinois, E. D.
Nov. 9, 1959.

R. Tieken, U. S. Atty. for Northern Dist. of Illinois, Chicago, Ill.,. for petitioners.

PERRY, District Judge.

Before the court are two petitions for removal. Both petitions relate to contempt proceedings against each of the petitioners, therein named, based on certain testimony given by each of them in the Criminal Court of Cook County, Illinois, in a certain case entitled, "People of the State of Illinois v. William A. Taylor and Otis Peek, Jr.," numbered therein Criminal Action No. 59–2322. (That case will hereinafter be referred to as the "Taylor case".) Both petitions for removal to this court are founded on Section 1442(a), Title 28 of the United States Code.

### Case No. 59 C 1515

In Case No. 59 C 1515 in this court, the petitioners are Theodore J. Heisig and Edward A. Cass and their petition for removal reads as follows:

"1. That on September 16, 1959, the trial of a criminal matter entitled People of the State of Illinois vs. William A. Taylor and Otis Peek, Jr., was commenced in the Criminal Court of Cook County and State of Illinois wherein the aforementioned defendants were charged with the sale and possession of a certain narcotic drug, to wit, heroin.

"2. That on September 16 and 17, 1959, your petitioners, Theodore J. Heisig and Edward A. Cass, were subpoenaed as witnesses and did testify on behalf of the People of the State of Illinois in the aforesaid criminal matter.

"3. That at all times mentioned in the aforesaid court action your petitioners were officers of the United States Government, to wit, United States Treasury Enforcement Agents assigned to the Bureau of Narcotics, and at the time and place of their testimony in the aforesaid action were acting solely under the right and color of their office and in pursuance of their official duties as such agents.

"4. That as a result of the testimony given by your petitioners in the aforesaid case your petitioners were summarily cited for contempt of court on September 17, 1959.

"5. No service of process was at any time made upon your petitioners nor have any pleadings been served upon your petitioners.

"6. That the time for your petitioners to remove this cause to the United States District Court has not yet expired.

"7. This petition for removal of this cause from the Criminal Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division, is founded upon Section 1442(a), Title 28, United States Code.

"8. This petition is accompanied by bond with good and sufficient surety that your petitioners, and each of them, will pay all costs and disbursements by reason of these removal proceedings in the event that determination is made that this action is not removable or is improperly removed.

"Wherefore, your peitioners, Theodore J. Heisig and Edward A. Cass pray that this action be removed from the Criminal Court of Cook County, Illinois, to this Court for hearing, trial and determination, as provided under Section 1442(a), Title 28, United States Code."

### Case No. 59 C 1519

In case No. 59 C 1519 in this court, the petitioner is John Joseph Genarella. His petition, with the exception of paragraph 3 thereof, and some minor changes, is the same as that filed in case No. 59 C 1515. Paragraph 3 of his petition reads as follows:

"3. That at all times mentioned in the aforesaid court action your petitioner was a person acting under officers of the United States Government, to wit: United States Treasury Enforcement Agents assigned to the Bureau of Narcotics, and at the time and place of your petitioner's testimony in the aforesaid action, your petitioner was a person acting under an office *(sic)* of the United States, which officer was in pursuance of his official duties as United States Treasury Enforcement Agent."

Pursuant to a writ of certiorari issued herein, a certified transcript of the record and proceedings had in the Criminal Court in the Taylor case, as well as the record of the contempt proceedings had against each of the petitioners herein, is now before this court.

It appears that on June 12, 1959, Agents Cass and Heisig arrested one William A. Taylor for the possession and sale of narcotic drugs; that at the trial of the case Agents Cass and Heisig and Special Employe Genarella each identified a person—then in the courtroom and on trial as a defendant in the case—as the William A. Taylor who had been so arrested; that the person so identified was called as a witness in his own behalf and testified that his name was William Taylor and that on June 12, 1959, he had been in the Cook County Jail where he had been continuously since May 22, 1959; that court records, as well as the testimony of Warden Johnson, called to testify in the matter, substantiated the defendant's assertion that he had been in jail continuously since May 22, 1959, and so could not have been the person arrested by the agents on June 12, 1959.

It further appears that both William Taylor and William A. Taylor were brought into court, whereupon each of the petitioners herein, when called to the stand and asked to identify the man who had been arrested on June 12, 1959, pointed to William A. Taylor and admitted that the previous identification of William Taylor had been erroneous.

At this point it should be observed that the two Taylors, in addition to bearing similar names, appear to have been very similar in appearance. Both men were of the Negro race with brown eyes, black hair, and a mustache. William was 5' 4" and weighed about 130 pounds while William A. was 5' 5" and weighed about 135 pounds.

It further appears that on September 17, 1959, Judge Covelli of the Criminal Court, having indicated his intention to hold each of the petitioners herein in contempt of court on the ground that their testimony had been perjurious, sentenced each of them to a term of six months in the Common Jail of Cook County, Illinois, for direct contempt of court, and continued the cases until 2:00 o'clock on the next day, September 18, 1959, for disposition.

It further appears that the petitions for removal to this court were filed in this court at 10:00 o'clock A.M. on September 18, 1959; that at 10:05 o'clock A.M. on the same day an order of removal was entered by this court, and that at 1:45 o'clock P.M. on September 18th copies of the aforesaid writ of certiorari were served on said Judge Covelli and the Clerk of the Criminal Court of Cook County, and the cause was removed to this court for further proceedings.

A careful examination of the petitions for removal and of the aforesaid transcript and records caused this court, *sua sponte*, to question the propriety of the removal to this court of these two cases and of this court's jurisdiction to proceed to a hearing on the merits of the two cases.

All petitioners herein base the removal of their cases to this court on Section

1442(a) of Title 28 U.S.C. which reads, in part, as follows:

"(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Any officer of the United States or any agency thereof, or person *acting under him, for any act* under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."

■ Since the right to remove a cause from a State court to a federal court is entirely statutory, the first query to be answered is: Have all the requirements of the statute been met in these removals?

■ Obviously all petitioners have met one of the requirements set forth in above sub-paragraph (1) of the statute since petitioners Heisig and Cass are enforcement agents of the Federal Bureau of Narcotics, United States Treasury Department, and petitioner Genarella was a special employe acting under said two enforcement agents.

An examination of each of the petitions herein, however, raises a question as to the sufficiency of the allegations therein. Although there is a general allegation in each petition that "as a result of the testimony given" by petitioners in the Taylor case they were summarily cited for contempt of court on September 17, 1959, there is no allegation stating what petitioners' testimony was which caused them to be so cited. There is no allegation that the testimony complained of consisted in the erroneous identification by petitioners of a defendant in the Taylor case, nor is there an allegation that the petitioners did in fact identify the wrong person during the trial of that case.

■ A petition for removal should incorporate sufficient averments to inform the court fully and a petition which does not do so is insufficient.

■ Turning to Section 1442(a) again, we find that the statute requires that the proceeding to be removed be "a civil action or criminal prosecution commenced in a State court." The proceedings here removed were neither civil actions nor were they criminal prosecutions commenced in the State court. They were proceedings conducted by the court, pursuant to its inherent power to punish for contempt, and as such were not subject to removal to this court.

■■ The power to punish for contempt of his court is a judge's means of preserving the dignity of that court, and when a State court judge sees fit to exercise his power to punish for contempt of his court, the proceeding is not one that can be removed to a federal court under Section 1442—not only because it is not a "civil action or criminal prosecution commenced in a State court," but also because if such a removal were permitted it would involve a re-hearing and re-consideration by the federal court of the evidence, testimony and events which led up to the citation for contempt; it would, in effect, make of the federal court an appellate tribunal and vest it with power to review the action of the State court judge. This court has no such jurisdiction and such jurisdiction cannot be conferred upon it by a removal petition.

Petitioners Heisig and Cass attempt to meet another requirement of said sub-paragraph (1) of the statute for they allege "and at the time and place of their testimony in the aforesaid action (they) were acting solely under the right and color of their office and in pursuance of their official duties as such agents."

■ When petitioners Heisig and Cass testified in the Taylor case, and particularly when they identified the wrong man as the one whom they had arrested on June 12, 1959, were they acting solely under the right and color of their of-

fice as required by the statute? This court thinks not.

When Special Employe Genarella testified in the Taylor case, and particularly when he identified the wrong man as the one who had been arrested on June 12, 1959, was he, as alleged in paragraph 3 of his petition for removal,

"* * * a person acting under officers of the United States Government, to wit: United States Treasury Enforcement Agents assigned to the Bureau of Narcotics, and at the time and place of your petitioner's testimony in the aforesaid action, your petitioner was a person acting under an office *(sic)* of the United States, which officer was in pursuance of his official duties as United States Treasury Enforcement Agent"?

This court thinks not.

Each petitioner was acting in his capacity as an individual and as a citizen when he testified in the Taylor case.

Exploring this facet: even assuming, *arguendo,* that the causes in the instant cases were "civil action[s] or criminal prosecution[s]" as required by the statute, this court is of the view that they were not properly removable to this court under said Section 1442(a).

A case very much in point is State of Maryland v. Soper (No. 2) 270 U.S. 36, 46 S.Ct. 192, 70 L.Ed. 459. There an indictment against four prohibition agents and their chauffeur for conspiracy to obstruct justice by false testimony was found in a Maryland State Court. It was removed under § 33 of the Judicial Code [1] to the United States District Court. The State of Maryland petitioned for a writ of mandamus against Judge Soper of that court directing him to remand the indictment to the State court. The indictment charged that the defendants "conspired in a hearing before a justice of the peace of Harford County, acting as the coroner with a jury and engaged in the official duty of inquiring into the manner of the death of Lawrence Wenger on November 20, 1924, to deceive the coroner and jury by withholding the facts concerning Wenger's death, and falsely asserting ignorance thereof, in order to induce them to return a false and erroneous verdict, and thus to obstruct justice in violation of a criminal statute of Maryland."

The court held that the indictment was not removable under § 33 of the Judicial Code. Quoting from the opinion of the court:

"Counsel for the state of Maryland argue that the accused officers were in no sense acting in their official capacity when engaged in the alleged conspiracy to deceive the coroner; that their duty had been discharged when they destroyed the still, that their subsequent reports of what had happened to their federal superiors are not the subject of

1. Section 33 of the Judicial Code, above mentioned, which may be described as the forerunner of Section 1442 of Title 28 U.S.C. reads as follows: "Sec. 33. That when any civil suit or criminal prosecution is commenced in any court of a State against any officer appointed under or acting by authority of any revenue law of the United States now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law, or is commenced against any person holding property or estate by title derived from any such officer, and affects the validity of any such revenue law, or against any officer of the courts of the United States for or on account of any act done under color of his office or in the performance of his duties as such officer, or when any civil suit or criminal prosecution is commenced against any person for or on account of anything done by him while an officer of either House of Congress in the discharge of his official duty in executing any order of such House, the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the district court next to be holden in the district where the same is pending upon the petition of such defendant to said district court, and in the following manner."

this prosecution; that the indictments for conspiracy and perjury were based not on acts which the defendants had done in pursuance of federal law and in discharge of their duty to the federal government, but on testimony given by them under their obligations to the state as individuals and for which they were detained in jail. To this it is answered, on behalf of the United States, as follows:

" 'But how did the officers come to be in jail? If they had not been engaged in the performance of their duties as federal officers they would never have been there. When they found Wenger's body, they had just come from performing their duty, and were on their way back to report officially to their superior. At that time they were still acting in their official capacity. United States v. Gleason, [Fed.Cas. No. 15,215], 1 Wool.C.C. 128. In immediately seeking for a physician and in reporting Wenger's death at once to the state's attorney, they were doing the only reasonable act which could be expected of them, both as public officers and' as private citizens. But, as their petition alleges, the state's attorney, on being informed by them that "your petitioners * * * were prohibition officers," ordered them to be at once placed under arrest. *

" 'If they had not discovered Wenger and reported his murder, there would have been no need for them to testify before the coroner's jury, and there would have been no occasion for any charge of conspiracy. The two charges, it is submitted, are so closely interrelated that they can not properly be separated. The charge of murder gave rise to the charge of conspiracy. * * * ' "

"We may concede that the reports of the officers to their federal superiors were within their official duty, but it does not follow that whatever happened between the events at the place of the still and the return to Baltimore to make report was within the protection of their official immunity. It depends upon the nature of that which they did in the interval. The right of the state to inquire into suspected crime in its territory justifies the use of investigation by its officers and the questioning of suspected persons under oath. The response of the federal officer under suspicion to such questioning is not an act of his under federal authority.

"Of course one can state a case in which acts not expressly authorized by the federal statutes are such an inevitable outgrowth of the officer's discharge of his federal duty and so closely interrelated with it as necessarily to be within the protection of section 33.

"Thus removals of prosecutions on account of acts done in enforcement of the revenue or prohibition laws or under color of them properly include those for acts committed by a federal officer in defense of his life, threatened while enforcing or attempting to enforce the law. Such acts of defense are really part of the exercise of his official authority. They are necessary to make the enforcement effective. * * *

"The defendants when called upon to testify before the coroner were not obliged by federal law to do so. Indeed, even under state law they might have stood mute, because the proceeding was one in which they were accused of crime. They themselves show that they voluntarily made the statements upon which these indictments were founded. While of course it was natural that, if not guilty, they should have responded fully and freely to all questions as to their knowledge of the transaction, with a view of showing their innocence, nevertheless their evidence was not in performance of their duty as officers of the United States."

In Maryland v. Soper (No. 3), 270 U.S. 44, 46 S.Ct. 194, 70 L.Ed. 462, another

case growing out of the same occurrence as Maryland v. Soper (No. 2) just quoted, the Circuit Court of Harford County, Maryland, returned an indictment against one Ely for perjury. Like the preceding case it was removed to the District Court and the State of Maryland sought a writ of mandamus against Judge Soper directing him to remand it. The Supreme Court held that "there was no ground for removing the prosecution of Ely for perjury, and that the mandamus to require the remanding of the removal should be made absolute."

It should be observed that the cause remanded by the Supreme Court in each of the Soper cases was an indictment—a criminal prosecution commenced.

This court is of the view that both causes herein (No. 59 C 1515 and No. 59 C 1519) were improperly removed to this court, were removed without jurisdiction, and should each be remanded to the Criminal Court of Cook County, Illinois, for further proceedings.

Order accordingly.