STATE OF WISCONSIN,
Plaintiff-Appellee,

v.

Kathleen SCHAFFER,
Defendant-Appellee,
Appellant.

Nos. 76–2234 and 76–2235.

United States Court of Appeals,
Seventh Circuit.

Argued May 2, 1977.
Decided Nov. 3, 1977.

Stephen M. Glynn, James M. Shellow, Milwaukee, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty., John A. Nelson, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, DUF-FY, Senior Circuit Judge, and SWYGERT, Circuit Judge.

FAIRCHILD, Chief Judge.

The appellant, Kathleen Schaffer, was charged with first degree murder of William Weber and was tried for this offense in the Circuit Court for Milwaukee County, Wisconsin.

During the course of this trial Schaffer caused the circuit court to issue a *subpoena duces tecum* requiring William Mulligan, the United States Attorney for the Eastern District of Wisconsin, to produce certain documents, including the minutes of a federal grand jury relating to the Weber homicide. Having been served with the *subpoena,* the United States Attorney moved the circuit court to quash it as it related to the grand jury transcripts. The circuit court denied the motion and ordered the United States Attorney to produce the grand jury materials or show cause why he should not be held in contempt.

Mulligan promptly filed a petition for removal in the United States District Court. Although the petition was captioned *State of Wisconsin v. Kathleen Schaffer,* it is clear from the text that no attempt was being made to remove the criminal case against Schaffer, but only the proceeding directed at the United States Attorney to compel him to produce the grand jury minutes or show cause why he should not be held in contempt. The petition cited 28 U.S.C. § 1442, and, echoing its language, characterized the action to be removed as one civil in nature commenced in a state court against an officer of the United States for an act under color of such office or on account of a right or authority claimed under an Act of Congress. The removal was to embrace only the issue of the *subpoena* requiring the United States Attorney to produce grand jury minutes, and the copies of pleadings attached related only to that matter.

Hearings were had before the district court on November 26 and 30, 1976. On December 3, the district court entered an order, embodying the views announced by the court November 30. The court found that it had jurisdiction under 28 U.S.C. § 1442; that the removal related only to the issue of the circuit court order denying the motion to quash the *subpoena* and the order to show cause, and did not remove the state court murder trial. In its order the district court vacated the order for the production of grand jury minutes and order to show cause why the United States Attorney should not be held in contempt. Kathleen Schaffer appealed (No. 76–2234).

During the course of the hearings on the removed contempt matter, and in response to the suggestion of the court as to the proper procedure, counsel for Ms. Schaffer filed a petition under Rule 6(e), Fed.R. Crim.P., for the release of testimony before grand juries "relating to the death of William Weber, the activities of William Weber prior to his death and the transactions between such witnesses and William Weber." A further hearing was held December 1.

On December 3, 1976, the district court denied the petition, finding that petitioner had failed to show particularized need sufficient to overbalance the strong policy in favor of the secrecy of grand jury proceedings. The court declined to assume the burden of an in-camera inspection of the minutes identified by the United States At-

torney to determine the presence of exculpatory material, although the court did ascertain that none of the persons identified by petitioner in connection with the State proceedings appeared before the grand jury. Ms. Schaffer appealed (No. 76–2235).

Her trial in state court proceeded, and resulted in her conviction and sentence to life imprisonment.

## I. The Vacation of the Subpoena—Contempt Order, Appeal No. 76–2234

■ Appellant does not argue the merits of the decision of the district court that the circuit court order requiring the United States Attorney to make disclosure or face contempt proceedings must be vacated. We think it clear that a court .may not compel such disclosure in violation of the obligation of secrecy imposed by Rule 6(e), and that if the merits be reached, the order of the district court was correct.

Appellant challenges the jurisdiction of the district court to decide the merits for the reason that the removal petition was legally insufficient to bring the subpoena—contempt matter before the court.

She contends that the state court's order to show cause did not commence a removable "civil action" or "criminal prosecution" within the removal statute, that no independent action was initiated against the United States Attorney, and, therefore, no removable action existed. The appellant argues that the proceeding involving the United States Attorney was merely ancillary to the trial of the criminal case, and an exercise of the inherent power of a court to secure compliance with its subpoena.

28 U.S.C. § 1442(a) provides that "A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court . . . ." Subparagraph (1) includes among these persons "Any officer of the United States, . . . for any act under color of such office . . . ." None of the parties questions the fact that Mr. Mulligan qualified as an officer acting under color of his office. This case was removable, therefore, if the proceeding against him can be characterized as a civil action or criminal prosecution for the purpose of § 1442(a).

The appellant argues that the order to show cause did not initiate an action against Mr. Mulligan. However, by statute a trial judge is empowered to commence contempt proceedings and use an order to show cause as the notice of process. Wis. Stat. §§ 295.01, 295.03(1) (1976). Although the court was not informed of the United States Attorney's refusal to comply with the subpoena by verified petition, as required by § 295.03, the court was made aware of the non-compliance by Mr. Mulligan's own motion to quash the subpoena. The subsequent denial of Mulligan's motion and the issuing of an order to show cause sufficiently commenced the contempt proceeding against Mulligan.

We think the language "civil action or criminal prosecution" should be broadly construed in the light of the purpose of the subsection, and find ourselves in agreement with the statements of the Fourth Circuit in State of North Carolina v. Carr, 386 F.2d 129, 131 (4th Cir. 1967):

> The issue is whether or not the contempt proceedings constituted a 'civil action or criminal prosecution commenced in a State court' within the meaning of 28 U.S.C. § 1442(a). The District Court classified the present proceeding as 'criminal.' The Government argues that it was 'civil.' The State urges that it was neither, but rather 'sui generis.' Accordingly, the State says, it was not either a 'civil action' or 'criminal prosecution' within the meaning of the removal statute. We think it unfruitful to quibble over the label affixed to this contempt action. Regardless of whether it is called civil, criminal, or sui generis, it clearly falls within the language and intent of the statute.

> \* \* \* \* \* \*

To repeat, the central and grave concern of the statute is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in

any but a Federal forum. Thus the statute looks to the substance rather than the form of the state proceeding; this is the reason for the breadth of its language. Accordingly, the applicability of the statute to the present case is perfectly apparent. By citing Carr for contempt, the State Court attempted to subject him to incarceration until such time as he complied with the Court's order and thus disobeyed the directive of his superior officers. A statute designed to permit Federal officers to perform their duties without State interference clearly applies to such a situation, regardless of the label the State chooses to affix to its action.

We conclude that the proceeding here, although ancillary to the murder trial, constituted a sufficient separate action against Mr. Mulligan for an act in his official capacity as United States Attorney. The resultant case, whether deemed criminal or civil in nature, placed Mulligan in jeopardy for his refusal, based on his official duty, to comply with a state court order. He was required to defend his actions and face the consequences of his disobedience. Whatever the docketed title of this case, it represented a distinct action against Mulligan, commenced by the order to show cause. Clearly the petition did not seek removal of the entire state murder prosecution. The issue in the proceeding against Mulligan was, in our opinion, distinct and separable from the charge against Kathleen Schaffer, and, as such, validly removed without also removing the murder case. *United States v. Penney,* 320 F.Supp. 1396, 1397 (D.C. 1970).

■ The purpose of the removal statute is to insure a federal forum for cases where federal officials must raise defenses arising out of their official duties. *Willingham v. Morgan,* 395 U.S. 402, 405, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Mr. Mulligan's refusal to comply with the *subpoena* was based on the proposition that he could not disclose the requested material without violating Rule 6(e) of the Federal Rules of Criminal Procedure. This rule prohibits his disclosure of grand jury transcripts unless done

in the performance of his duties or unless directed by the district court. His defense to the charge of contempt thus was based on his duty under federal law. The removal statute is clearly broad enough " . . . to cover all cases where federal officers can raise a colorable defense . . ." arising out of their official duties. 395 U.S. at 405–407, 89 S.Ct. at 1816. Mr. Mulligan, having become a defendant in a contempt proceeding, was faced with such a case, and, therefore the exercise of removal jurisdiction by the district court was proper.

The appellant suggests, however, that if Mr. Mulligan's involvement in the contempt proceeding made removal proper, the entire murder prosecution was removed to the federal district court. Appellant points out that when an action is pending in a state court against a number of defendants, only one of whom is a federal officer, sued on account of an official act, removal at the instance of the federal officer removes the entire action with all defendants. *See Iowa Public Service Co. v. Iowa State Commerce Commission,* 407 F.2d 916, 918 n.3 (8th Cir. 1969), *cert. denied,* 396 U.S. 826, 90 S.Ct. 71, 24 L.Ed.2d 77 (1970); *Allman v. Hanley,* 302 F.2d 559, 562 (5th Cir. 1962). As already stated, we think the proceeding against the federal officer here was distinct and separate for the purpose of the removal statute.

Finally, the appellant refers us to a district court opinion, *In Re Heisig,* 178 F.Supp. 270 (N.D.Ill.1959), and suggests that its reasoning should control the removal issue. *Heisig* involved the removal of contempt proceedings by federal officials. The district court remanded the case to the state court holding that the contempt proceeding was not a civil action or criminal prosecution, and, therefore, not removable under the statute. 178 F.Supp. at 273. This finding was only one of the several grounds which the court thought justified a remand. To the extent that *Heisig* held that a contempt proceeding does not constitute a civil action or criminal prosecution within the meaning of § 1442, we deem it erroneous.

## II. The Denial of the Rule 6(e) Petition, Appeal No. 76–2235

The appellant also appeals[1] from the order denying her petition for disclosure of the grand jury testimony. The district court found that the appellant had "... failed to satisfy the particularized need requirement which has been engrafted upon Rule 6(e) of the Federal Rules of Criminal Procedure." After analyzing the appellant's petition, the court characterized the request for disclosure as a "mere hope" that some unknown witnesses may have provided the grand jury with some kind of exculpatory evidence. Balanced against the need for secrecy of grand jury proceedings, the court held that the appellant's claim did not warrant disclosure of the transcripts.

Grand jury testimony has traditionally been treated as confidential communication and, therefore, the proceedings have been cloaked in secrecy. *United States v. Socony Vacuum Oil Co.,* 310 U.S. 150, 233, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Johnson,* 319 U.S. 503, 513, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943). The scope and application of the rule of secrecy of grand jury proceedings has been codified in Rule 6(e) of the Federal Rules of Criminal Procedure. Paragraph (e)(1) of this rule, which was recently amended,[2] generally prohibits disclosure of the grand jury proceedings by a government attorney, a grand juror, or anyone who assists in the taking of testimony. Subparagraph (e)(2)(C)(i) provides an important exception to the rule by permitting disclosure "when so directed by the court preliminarily to or in connection with a judicial proceeding . . . ." The specific reasons for the maintenance of secrecy are varied. *See, United States v. Rose,* 215 F.2d 617, 628–29 (3rd Cir. 1954). They all support the important policy of encouraging and facilitating the exchange of information between witnesses and grand jurors, free from the fear of retaliation or tampering. *United States v. Proctor & Gamble,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

█ A trial judge must be circumspect in the exercise of his discretion in ordering the disclosure of grand jury minutes. He may only order such disclosure when the party seeking it has demonstrated that a "particularized need exists . . . which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959). The "particularized need" standard was reaffirmed in *Dennis v. United States,* 384 U.S. 855, 868–75, 86 S.Ct. 1840, 16 L.Ed.2d 975 (1966) with a general suggestion by the Court favoring disclosure. Within the context of disclosure based on need, the trial judge is required to choose the path which best promotes the administration of criminal justice. 384 U.S. at 870, 86 S.Ct. 1840.

The appellant argues that she has demonstrated particularized need for the transcripts. She contends that since the federal grand jury has finished its work the reasons for maintaining secrecy are substantially less compelling than the policies favoring disclosure. At stake, she adds, is her ability to prove her innocence. Finally, the appellant stresses that the disclosure would be monitored by the state trial judge, who has volunteered to screen the grand jury material for exculpatory evidence. Only if the judge finds such evidence would any grand jury material be disclosed to the appellant.

Appellant was tried for the murder of William Weber, which occurred November 12, 1973. The principal witness against her was Earl Seymour, who has pled guilty to second degree murder after a mistrial for first degree murder, and testified that he shot Weber. The State's theory was that

---

1. An order denying a petition, based on Rule 6(e), which "disposes of the contentions of all the parties, leaving nothing else to be decided, . . . ends the controversy before . . . ." the court, and therefore is appealable under 28 U.S.C. § 1291. *United States v. Byoir,* 147 F.2d 336, 337 (5th Cir. 1945). *See also, State of Illinois v. Sarbaugh,* 552 F.2d 768, 773 (7th Cir. 1977). The order before us fits this characterization and is therefore appealable.

2. Pub.L. 95–78. The Rule was amended on July 30, 1977, effective October 1, 1977.

appellant, said by Seymour to have been present at the shooting, had lured Weber to the place where Seymour shot him, and had procured the killing because Weber, her source of drugs, had threatened to cut off her supply.

Some months after the homicide, June, 1974, and thereafter, the federal grand jury investigated illicit drug activities, and are thought to have inquired, incidentally, into the related killings not only of Weber, but one Mitchell, killed a few days later. Indictments were returned against Callen, Druml, and Gaertner. The federal DEA is known to have investigated these activities. At lest Callen and Druml have been convicted. Schaffer was first charged with the murder of Weber in August, 1975.

Testimony at the Schaffer trial developed that Callen was associated with Weber in the sale of cocaine. Druml was their supplier, to whom Weber came to owe a substantial amount of money. Two days before the homicide, Callen and Druml visited Weber and Druml demanded payment.

Weber's girlfriend, Maloney, found her apartment ransacked the day of the murder, but found $10,000 which the intruders had missed. Callen later asked her about the money, and she turned it over to him.

Seymour, who confessed to killing Weber, and testified against Schaffer, had dealings with Gaertner. He also testified to playing an intriguing role as a double agent, employed on a commission basis to assist the Republic of Mexico in problems arising from importing and exporting contraband. He claimed to be responsible for one to two dozen arrests for drug offenses by American authorities. Moreover, he had been tried for the Weber murder, but the trial ended in a mistrial, after which he plead guilty to second degree murder. He had been a witness in his own behalf at the first trial and acknowledged at the Schaffer trial numerous instances of perjury.

Counsel for Schaffer represented that the defense position was that Schaffer was not present when Seymour killed Weber, although the record does not show whether she had testified or intended to testify.

Counsel suggested that the grand jury minutes might reflect testimony that the homicide was motivated as a result of Weber's dealings in drugs with others, and particularly of his refusal to pay Druml.

It does appear that testimony before the grand jury related at least incidentally to the killing of Weber. The Assistant United States Attorney tendered sealed packets of testimony to the district court. He represented that in one packet were the transcripts "which relate to the investigation that [counsel] is apparently concerned with." A smaller packet was said to contain excerpts described as "those portions of testimony which may in some remote way relate to the subject which is included in the petition submitted on behalf of Kathleen Schaffer."

It also appears that the state authorities had conducted a John Doe proceeding, investigating the same matters as the federal grand jury. All the records of this proceeding, including the reporter's notes and lists of witnesses have been lost.

Although appellant's petition sought "release" of the grand jury testimony without qualification, counsel orally, at the hearing, very drastically and significantly narrowed his request. He asked only that the minutes be turned over for in-camera inspection by the Honorable Max Raskin, who presided at the state trial, and was thus in a position to be aware whether any material would be helpful to appellant. This limitation has been repeated in the briefs on appeal, with testimony being made known to counsel only upon Judge Raskin's determination that the testimony constituted exculpatory evidence.

We are aware that demonstrating a particularized need is often a difficult task and applying this standard to a given set of facts is an inexact process. Courts have found that a particular need has been shown when disclosure is requested to impeach a witness. *United States v. Proctor & Gamble, supra,* 356 U.S. at 683, 78 S.Ct. 983, to attack deposition testimony, *Atlantic City Electric Co. v. A.B. Chance Co.,* 313 F.2d 431 (2d Cir. 1963), or to refresh a witness' recollection about matters

he previously testified to before a grand jury, *Baker v. United States Steel Corp.,* 492 F.2d 1074, 1079 (2d Cir. 1974).

The district court declined to review the grand jury minutes for testimony which might appear to aid appellant's case, but he did ascertain from the list of witnesses that none of the individuals named by appellant had testified before the grand jury. Hence impeachment by use of prior inconsistent statements was ruled out. Appellant was not able to name a particular witness before the grand jury whose testimony she needed to see. Thus it must be acknowledged that appellant has not demonstrated the more traditional forms of need.

We think, however, on balance, that it was an abuse of discretion not to authorize disclosure to Judge Raskin, with suitable directions for disclosure by him to appellant's counsel only in the event and to the extent that testimony likely to be helpful to her case appeared.

We think one consideration that should be given particular weight here is the fact that the state court judge issued a *subpoena duces tecum* requiring the production of the federal grand jury minutes. The *subpoena* was for the distinct purpose of furthering a full and fair trial in the state prosecution. It cannot be doubted that Judge Raskin ordered the production of the minutes in the interest of a proper administration of justice. Accordingly, principles of federalism and comity come into play and should be accommodated unless factors dictating secrecy are overriding.

Once a grand jury has completed its work, indictments having been brought, the reasons for secrecy become less compelling. *State of Illinois v. Sarbaugh,* 552 F.2d 768, 775 (7th Cir. 1977). The grand jury in question sat between June and November of 1974, and even though the government asserts that some of the matters relating to that grand jury investigation have not been concluded, it has undoubtedly completed its primary task. "[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *Socony-Vacuum Oil Co., supra,* 310 U.S. at 234, 60 S.Ct. at 849.

We recognize that at this juncture, the state trial having been completed, a review of the minutes would doubtless be carried on in the light of standards for newly discovered evidence. *Naden v. Johnson,* 61 Wis.2d 375, 212 N.W.2d 585 (1973). We assume that Judge Raskin is still willing to undertake the task.

Because of the obvious questions concerning the credibility and criminal involvement of the State's chief witness, the plausibility of the involvement of Weber's drug traffic associates in his death, the probability that grand jury testimony concerning the transactions of his associates at about the time of the murder would disclose that fact, if true, the accessory type theory of Schaffer's guilt, and the seriousness of the offense with which she was charged and convicted, and because disclosure will be made only to Judge Raskin until evidence helpful to appellant is found present, we think appellant's need for disclosure thus limited outweighs the policy of secrecy.

The judgment appealed from in Appeal No. 76–2234 is AFFIRMED. The judgment appealed from in Appeal No. 76–2235 is REVERSED, and the cause remanded for further proceedings consistent with this opinion.