887 F.2d 1451
 The STATE OF FLORIDA, Plaintiff,
v.
Joyce COHEN, Defendant-Appellant,
United States of America ex rel., Dexter W. Lehtinen, United
States Attorney and Jeanne M. Mullenhoff,
Assistant United States Attorney,
Non-party-Appellees.
 No. 89-5952
 Non-Argument Calendar.
United States Court of Appeals,
Eleventh Circuit.
 Oct. 12, 1989.
As Amended Dec. 12, 1989.
 
 Alan S. Ross, Weiner, Robbins, Tunkey & Ross, Miami, Fla., for defendant-appellant.
 Dexter W. Lehtinen, U.S. Atty., Linda Collins Hertz, Sonia Escobio O'Donnell and Jeanne M. Mullenhoff, Asst. U.S. Attys., Miami, Fla., for U.S.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HATCHETT, ANDERSON and EDMONDSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal, arising out of an ongoing state capital murder trial, presents the unusual circumstance in which discovery issues concerning a state court criminal trial are taking place in the federal courts. The discovery issue currently on appeal presents the challenge of finding the appropriate balance between a criminal defendant's right to have access to information relevant to her defense and the federal government's interest in preserving the confidentiality of an informant in an ongoing criminal investigation. Because new facts have emerged since the district court issued its order, we find that a remand is necessary.
 
 I. BACKGROUND
 A. Judicial Proceedings
 
 2
 Appellant Joyce Cohen has been indicted for the first degree murder of her husband, Stanley Alan Cohen. Her murder trial began on October 10, 1989, in the Circuit Court for the Eleventh Judicial Circuit, in and for Dade County, Florida.
 
 
 3
 In anticipation of her trial, Cohen filed a motion on March 13, 1989, for subpoenas seeking testimony and records from various federal agents and agencies with regards to Frank Diaz, a fugitive from justice who was, at one time, considered to be a suspect in her husband's murder. On March 31, 1989, the federal government filed motions in state court both to quash the subpoenas and to request a protective order. In response to the federal government's motions, the state court issued an order directing the federal government to produce on or before June 12, 1989, all records covered by the subpoenas for an in-camera review.
 
 
 4
 When the federal government failed to respond to the state court production order, the state court, on June 16, 1989, issued an order requiring the federal government to show cause why it should not be held in contempt for failing to abide by its earlier order. Confronted with the state court's show cause order, the federal government sought refuge in the federal district court, which accepted jurisdiction pursuant to 28 U.S.C.A. Sec. 1442(a)(1).
 
 
 5
 B. Frank Diaz's Relationship to the Decedent
 
 
 6
 In the federal district court, the appellant and the federal government disagreed as to the scope of discovery that should be made available to the appellant with regards to the government's ongoing investigation into the whereabouts of Frank Diaz. Diaz, who is the subject of two federal grand jury indictments in the Southern District of Florida concerning the laundering of approximately $600,000, has been a fugitive from justice since 1985 when he failed to appear in federal court to enter a guilty plea. Since that time, Deputy Marshal Shawn Conboy has spearheaded the effort to locate Diaz.
 
 
 7
 As part of his investigation, Conboy engaged a confidential informant who provided Conboy certain information regarding Diaz's whereabouts. It is the information provided by this confidential informant that is at the heart of the present controversy.[1]
 
 
 8
 Since Diaz has been a fugitive, he had business dealings with the deceased, Stanley Cohen. Exactly what the nature of those dealings was is unclear, but the appellant intimates that the relationship concerned her husband's activities as a middleman in a large scale cocaine ring and Diaz's experience as an alleged money launderer. According to one of appellant's witnesses, at some point in time after Diaz became a fugitive and before Cohen was killed, Cohen held a large sum of money for Diaz. In addition, Cohen and Diaz were known to have vacationed at the island of Martinique after Diaz became a fugitive, and Cohen bragged to an acquaintance that he had a connection who could get in touch with Diaz "any time Cohen needed him."
 
 
 9
 Approximately one week before Cohen was murdered, Diaz visited Cohen at his home in the Coconut Grove section of Miami, Florida. During this visit, Diaz was accompanied by an unidentified young woman. This visit was witnessed by both the appellant and her son.[2]
 
 
 10
 Although Diaz's subsequent conversation with Cohen that day was out of earshot from the witnesses, one of the topics discussed apparently concerned an airplane owned by Cohen. According to testimony from a Drug Enforcement Agent, Cohen's airplane had been on a watch list since August 1985 as having been suspected as being used to smuggle currency out of the United States into Panama.
 
 
 11
 One week after the visit, on March 7, 1986, Cohen was murdered in the bedroom of his home in Coconut Grove. On this day, according to Conboy's confidential informant, Diaz was back in Miami. Although several individuals including Diaz were initially suspected of having committed Cohen's murder, Cohen's wife, appellant Joyce Cohen, was subsequently indicted for having arranged to have her husband executed.
 
 II. JURISDICTION
 
 12
 The posture of this case is highly unusual. On appeal to this court is the discovery dispute concerning whether the federal government should provide information concerning its confidential informant to Ms. Cohen so that she may use that information in her ongoing state court criminal trial. The federal government is not involved in Ms. Cohen's prosecution in the state criminal proceedings, nor are the state authorities who are prosecuting her in state court parties to this appeal. Moreover, this court is typically not involved in criminal case discovery disputes, particularly when the issue has been resolved in favor of the federal government. Rather, this court traditionally only reviews those decisions after a conviction has been obtained and the case is on either direct or habeas appeal.
 
 
 13
 Because this case is out of the norm, some discussion of the jurisdiction of the federal court is in order. The federal government effectuated its removal pursuant to 28 U.S.C.A. Sec. 1442(a)(1) which provides that:
 
 
 14
 A civil or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division wherein it is pending:
 
 
 15
 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
 
 
 16
 This statute is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties. Willingham v. Morgan, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969); Loftin v. Rush, 767 F.2d 800, 804 (11th Cir.1985). In enacting the statute, Congress recognized "that federal officers are entitled to, and the interest of national supremacy requires, the protection of a federal forum in those actions commenced in state court that could arrest, restrict, impair, or interfere with the exercise of federal authority by federal officials." Murray v. Murray, 621 F.2d 103, 106 (5th Cir.1980).
 
 
 17
 Section 1442(a)(1) permits the removal of not only those actions commenced in state court that potentially expose a federal official to civil liability or criminal penalty for an act performed in the past under color of office, but also the removal of civil matters that seek to either prohibit or require certain actions by a federal official in the future. Murray v. Murray, 621 F.2d at 107 (citing New Jersey v. Moriarity, 268 F.Supp. 546, 555 (D.N.J.1967)).
 
 
 18
 Only two prerequisites must be met before an action may be removed under Sec. 1442(a)(1): first, the case must be against any officer, agency, or agent of the United States for any act under color of such office; and second, the federal actor or agency being challenged must raise a colorable defense arising out of its duty to enforce federal law. See Mesa v. California, --- U.S. ----, ----, 109 S.Ct. 959, 964, 966-67, 103 L.Ed.2d 99 (1989); Willingham v. Morgan, 395 U.S. at 406-07, 89 S.Ct. at 1816; Loftin v. Rush, 767 F.2d at 804-05. When these two conditions are satisfied, the case may be removed to a federal court. In other words, regardless of whether the federal court would have had jurisdiction over the matter had it originated in federal court, once the statutory prerequisites to Sec. 1442(a)(1) are satisfied, Sec. 1442(a)(1) provides an independent jurisdictional basis. IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc., 676 F.2d 152, 160 (5th Cir. Unit B 1982).
 
 
 19
 In the instant case, a state court subpoena had been served on Deputy Marshal Conboy and other federal agents. Under existing federal regulations, the agents were not permitted to provide the material as requested without first having obtained prior approval. See 28 C.F.R. Secs. 16.22-16.29 (1988).[3] When the prior approval was not forthcoming, the state court's request for the production of documents in camera went unanswered. Once the state court initiated contempt proceedings against the federal officials, removal of the contempt proceedings was appropriate.[4] See Swett v. Schenk, 792 F.2d 1447, 1450 (9th Cir.1986); State of Wisconsin v. Schaffer, 565 F.2d 961, 963-64 (7th Cir.1977).[5]
 
 III. MERITS
 
 20
 Having determined that federal court jurisdiction was proper, we turn to the merits. Neither party challenges the district court's determination that the refusal of the federal officials to provide the requested information should properly be assessed as an invocation of privilege to be evaluated by the federal courts. See NLRB v. Capital Fish Co., 294 F.2d 868, 873 (5th Cir.1961). Rather, the focus of the appeal concerns whether the district court struck the correct balance when it concluded that, under the circumstances of this case, the government's need to protect investigative records pertaining to an ongoing criminal investigation outweighed Ms. Cohen's need for the information requested. Cf. Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628-29, 1 L.Ed.2d 639 (1957) (courts must consider "the particular circumstances of each case, taking into consideration the crime charged, the possible defense, the possible significance of the informer's testimony, and other relevant factors" in balancing the public interest in protecting the flow of information with the individual's right to prepare a defense).
 
 
 21
 The district court, on the basis of the information before it, determined that Ms. Cohen's request to have Conboy testify would result in the revelation of Conboy's confidential informant's identity. After assessing Ms. Cohen's asserted need for the evidence Conboy could offer, the district court concluded that the government's interest in protecting Conboy's confidential informant from Diaz outweighed any disadvantages Ms. Cohen would suffer in preparing her defense absent Conboy's testimony.
 
 
 22
 Since the district court entered its ruling, however, new facts have emerged which could change the balancing calculus conducted by that court. In an attempt to stave off Ms. Cohen's appeal of the district court's order to this court, the federal government offered to provide certain testimony which may or may not prove helpful to Ms. Cohen. More importantly, that testimony suggests, and the government now concedes in its brief, Government's Brief at 8, that the identity of the informant is already known to Frank Diaz. From our review of the record, it appears that the district court was not aware of the fact that Diaz already knows the identity of the informant at the time it made its determination in favor of the federal government.
 
 
 23
 This concession may weaken the strength of the government's interest in maintaining its privilege to withhold information. See Roviaro v. United States, 353 U.S. at 60, 77 S.Ct. at 623. But see United States v. Tenorio-Angel, 756 F.2d 1505, 1510-11 (11th Cir.1985) (recognizing that the federal government may still have other valid reasons for nondisclosure even when the identity of an informant is known). Because the government's interest in law enforcement may have been altered by these new factual disclosures, a new assessment of the federal government's need for nondisclosure relative to Ms. Cohen's need for the requested testimony to assist her in mounting her defense is in order.
 
 IV. SUMMARY
 
 24
 Because the state court had initiated contempt proceedings against federal officers who had a colorable federal defense, the officers were justified in removing the contempt proceeding and the discovery dispute giving rise to that proceeding to the federal court. With regards to the district court's ultimate conclusion concerning the discovery dispute between the federal government and Ms. Cohen, a remand to the district court for further proceedings is necessary because new evidence has been developed that may shift the district court's assessment of the issue.
 
 
 25
 REMANDED.
 
 
 
 [1]
 The facts as discussed in this section are limited to those facts that appear to have been presented to the district court. Discussion of the new evidence that has been developed will be presented infra at 1455, where we explain why a remand is necessary
 
 
 [2]
 Appellant has also located two neighbors who will testify that Cohen mentioned to them one day after Diaz's visit that he had met with Diaz at his house
 
 
 [3]
 "In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with Secs. 16.24 and 16.25 of this part." 28 C.F.R. Sec. 16.22(a)
 
 
 [4]
 The officers' federal defense to the contempt proceedings was premised upon United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), and Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900), both of which held in cases involving similar federal regulations that a subordinate federal official was justified in refusing to produce evidence requested under a court subpoena when the regulations did not permit their release. Given the Supreme Court's insistence in Willingham v. Morgan, 395 U.S. at 405, 89 S.Ct. at 1815, that Sec. 1442(a)(1) be given a broad reading so as to encompass "all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law," the defense offered clearly justified removal
 
 
 [5]
 Removal of the contempt proceedings was appropriate notwithstanding the fact that the underlying criminal proceeding remained in the state court system. See State of Wisconsin v. Schaffer, 565 F.2d at 964. While such a result may seem at odds with prior precedent which holds that "when a federal officer exercises his prerogative under 28 U.S.C. Sec. 1442(a)(1) to remove any 'civil action' commenced against him in state court, the entire case against all defendants, federal and non-federal, is removed to federal court regardless of the wishes of his co-defendants," Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1376 (5th Cir.1980); Fowler v. Southern Bell Telephone & Telegraph Co., 343 F.2d 150, 152 (5th Cir.1965), that precedant must be reviewed in context. At issue in Arango was "a single, interlocked series of transactions" that could be more expediently handled in one judicial proceeding. Id., 621 F.2d at 1376 n. 6. In contrast, a contempt proceeding, although ancillary to the underlying state action, is distinct and separate from the ongoing state action. Swett v. Schenk, 792 F.2d at 1450; State of Wisconsin v. Schaffer, 565 F.2d at 964. As such, it could be properly removed without removing the entire state proceeding