WILLINGHAM, WARDEN, ET AL. *v.* MORGAN.

No. 228.  Argued April 22, 1969.—
Decided  June  9,  1969.

*Francis X. Beytagh, Jr.,* argued the cause for petitioners. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Ruckelshaus, Morton Hollander,* and *Walter H. Fleischer.*

*Joseph M. Snee,* by appointment of the Court, 393 U. S. 1061, argued the cause and filed a brief for respondent.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case raises some important questions about the power of federal officials to have actions brought against them removed to the federal courts. Petitioners Willingham and Jarvis are, respectively, the warden and chief medical officer at the United States Penitentiary at Leavenworth, Kansas. Respondent Morgan was a prisoner at the penitentiary at the time he filed this suit in the Leavenworth County District Court. He alleged in his complaint that petitioners and other, anonymous, defendants had on numerous occasions inoculated him with "a deleterious foreign substance" and had assaulted, beaten, and tortured him in various ways, to his great injury. He asked for a total of $3,285,000 in damages from petitioners alone, plus other amounts from the unnamed defendants. Petitioners filed a petition for removal of the action to the United States District Court for the District of Kansas, alleging that anything they may have done to respondent "was done and made by them in the course of their duties as officers of the United States of America . . . and under color of such offices . . . ." Petitioners invoked 28 U. S. C. § 1442 (a)(1), which allows removal to the federal courts of any civil action against "[a]ny officer of the United States . . . for any act

under color of such office . . . ." [1] The Federal District Judge denied respondent's motion to remand the case to the state courts and granted summary judgment to petitioners, holding that recovery of damages was barred by the official immunity doctrine of *Barr* v. *Matteo,* 360 U. S. 564 (1959). Thereafter, respondent perfected an appeal to the Court of Appeals for the Tenth Circuit. That court found it unnecessary to decide the immunity question, for it found insufficient basis in the record to support the District Court's refusal to remand the case to the state courts. 383 F. 2d 139 (1967). The District Court was reversed and the case remanded for further proceedings. Upon the Solicitor General's petition, we granted certiorari to consider whether the Court of Appeals decided the removal question erroneously.[2] 393 U. S. 976 (1968). We reverse.

## I.

The court below held that the "color of office" test of § 1442 (a)(1) "provides a rather limited basis for removal." 383 F. 2d, at 141. It noted that the record might well have supported a finding that petitioners were protected from a damage suit by the official immunity

---

[1] 28 U. S. C. § 1442 (a)(1) provides:

"(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue."

[2] The opinion below was in apparent conflict with at least three other Court of Appeals decisions. *Poss* v. *Lieberman,* 299 F. 2d 358 (C. A. 2d Cir.), cert. denied, 370 U. S. 944 (1962); *North Carolina* v. *Carr,* 386 F. 2d 129 (C. A. 4th Cir. 1967); *Allman* v. *Hanley,* 302 F. 2d 559 (C. A. 5th Cir. 1962).

doctrine. But it held that the test for removal was "much narrower" than the test for official immunity, 383 F. 2d, at 142, and accordingly that petitioners might have to litigate their immunity defense in the state courts. The Government contends that this turns the removal statute on its head. It argues that the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. On this view, the test for removal should be broader, not narrower, than the test for official immunity. We agree.

The federal officer removal statute has had a long history. See H. M. Hart & H. Wechsler, The Federal Courts and the Federal System 1147–1150 (1953). The first such removal provision was included in an 1815 customs statute. Act of February 4, 1815, § 8, 3 Stat. 198. It was part of an attempt to enforce an embargo on trade with England over the opposition of the New England States, where the War of 1812 was quite unpopular. It allowed federal officials involved in the enforcement of the customs statute to remove to the federal courts any suit or prosecution commenced because of any act done "under colour" of the statute. Obviously, the removal provision was an attempt to protect federal officers from interference by hostile state courts. This provision was not, however, permanent; it was by its terms to expire at the end of the war. But other periods of national stress spawned similar enactments. South Carolina's threats of nullification in 1833 led to the passage of the so-called Force Bill, which allowed removal of all suits or prosecutions for acts done under the customs laws. Act of March 2, 1833, § 3, 4 Stat. 633. A new group of removal statutes came with the Civil War, and they were eventually codified into a permanent statute which applied mainly to cases

growing out of enforcement of the revenue laws. Rev. Stat. § 643 (1874); Judicial Code of 1911, § 33, 36 Stat. 1097. Finally, Congress extended the statute to cover all federal officers when it passed the current provision as part of the Judicial Code of 1948. See H. R. Rep. No. 308, 80th Cong., 1st Sess., A134 (1947).

The purpose of all these enactments is not hard to discern. As this Court said nearly 90 years ago in *Tennessee* v. *Davis,* 100 U. S. 257, 263 (1880), the Federal Government

"can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection,— if their protection must be left to the action of the State court,—the operations of the general government may at any time be arrested at the will of one of its members."

For this very basic reason, the right of removal under § 1442 (a)(1) is made absolute whenever a suit in a state court is for any act "under color" of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a "federal interest in the matter," *Poss* v. *Lieberman,* 299 F. 2d 358, 359 (C. A. 2d Cir.), cert. denied, 370 U. S. 944 (1962), the very basic interest in the enforcement of federal law through federal officials.

Viewed in this context, the ruling of the court below cannot be sustained. The federal officer removal statute is not "narrow" or "limited." *Colorado* v. *Symes,* 286 U. S. 510, 517 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise

a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts. The position of the court below would have the anomalous result of allowing removal only when the officers had a clearly sustainable defense. The suit would be removed only to be dismissed. Congress certainly meant more than this when it chose the words "under color of . . . office." In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442 (a)(1).

## II.

The question remains, however, whether the record in this case will support a finding that respondent's suit grows out of conduct under color of office, and that it is, therefore, removable. Respondent alleged in his motion for remand that petitioners had been acting "on a frolic of their own which had no relevancy to their official duties as employees or officers of the United States." He argued that in these circumstances the case should be remanded to the state courts. The only facts in the record which in any way respond to this allegation appear in petitioners' affidavits in support of their motion for summary judgment.[3] There, petitioner Willingham de-

---

[3] This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits. See 28 U. S. C. § 1653; *Buell* v. *Sears, Roebuck & Co.,* 321 F. 2d 468 (C. A. 10th Cir. 1963); *Firemen's Ins. Co.* v. *Robbins Coal Co.,* 288 F. 2d 349 (C. A. 5th

clares that the only contact he has had with respondent was "inside the walls of the United States Penitentiary, Leavenworth, Kansas, and in performance of [his] official duties as Warden of said institution." Petitioner Jarvis declares, similarly, that his only contact with respondent was at the prison hospital "and only in the performance of [his] duties as Chief Medical Officer and only with regard to medical care and treatment, diagnoses and routine physical examination." Respondent did not deny either of these statements in his responsive affidavit. The question, then, is whether petitioners adequately demonstrated a basis for removal by showing that their only contact with respondent occurred while they were executing their federal duties inside the penitentiary.

The Judicial Code requires defendants who would remove cases to the federal courts to file "a verified petition containing a short and plain statement of the facts" justifying removal. 28 U. S. C. § 1446 (a). Moreover, this Court has noted that "the person seeking the benefit of [the removal provisions] should be candid, specific and positive in explaining his relation to the transaction" which gave rise to the suit. *Maryland* v. *Soper* (*No. 1*), 270 U. S. 9, 35 (1926); see *Colorado* v. *Symes, supra,* at 518–521. These requirements must, however, be tailored to fit the facts of each case.

It was settled long ago that the federal officer, in order to secure removal, need not admit that he actually committed the charged offenses. *Maryland* v. *Soper* (*No. 1*), *supra,* at 32–33. Thus, petitioners in this case need not have admitted that they actually injured respondent. They were, therefore, confronted with something of a dilemma. Respondent had filed a "scattergun" complaint, charging numerous wrongs on numerous different

---

Cir.), cert. denied, 368 U. S. 875 (1961). See also American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts 264–265 (Tentative Draft No. 6, 1968).

(and unspecified) dates. If petitioners were to be "candid, specific and positive" in regard to all these allegations, they would have to describe every contact they had ever had with petitioner, as well as all contacts by persons under their supervision. This would hardly have been practical, or even possible, for senior officials like petitioners.

In a civil suit of this nature,[4] we think it was sufficient for petitioners to have shown that their relationship to respondent derived solely from their official duties. Past cases have interpreted the "color of office" test to require a showing of a "causal connection" between the charged conduct and asserted official authority. *Maryland* v. *Soper (No. 1), supra,* at 33. "It is enough that [petitioners'] acts or [their] presence at the place in performance of [their] official duty constitute the basis, though mistaken or false, of the state prosecution." *Ibid.* In this case, once petitioners had shown that their only contact with respondent occurred inside the penitentiary, while they were performing their duties, we believe that they had demonstrated the required "causal connection." The connection consists, simply enough, of the undisputed fact that petitioners were on duty, at their place of federal employment, at all the relevant times. If the question raised is whether they were engaged in some kind of "frolic of their own" in relation to respondent, then they should have the opportunity to present their version of the facts to a federal, not a state, court. This is exactly what the removal statute was designed to accomplish. Petitioners sufficiently put in issue the questions of official justification and immunity; the validity of their defenses should be determined in the federal courts.

---

[4] Were this a criminal case, a more detailed showing might be necessary because of the more compelling state interest in conducting criminal trials in the state courts. Cf. *Colorado* v. *Symes, supra; Maryland* v. *Soper (No. 1), supra.*

The Court of Appeals, therefore, erred when it held that petitioners had not adequately demonstrated a right to have their case decided in the federal courts. Because of its resolution of the removal issue, the Court of Appeals did not express any opinion on the propriety of the District Court's award of summary judgment. That question has not been briefed or argued in this Court. Accordingly, we think it proper to vacate the judgment and remand the case to the Court of Appeals so that it may consider this and any other questions which remain in the case.

*It is so ordered.*

MR. JUSTICE BLACK, concurring.

I concur in the judgment of the Court and in the opinion except for one portion which is quoted below in answer to the Government's contention:

> "It argues that the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. On this view, the test for removal should be broader, not narrower, than the test for official immunity. We agree."

I see no necessity in this case for comparing the breadth of the law authorizing removal of cases from state to federal courts with the test "for official immunity." This case raises no question about official immunity from lawsuits for conduct of a government employee. Moreover, the difference between the breadth of a right to remove and a right to claim immunity is purely conceptual and cannot be measured by any means that I know about.

I would therefore eliminate the above-quoted statement from the Court's opinion.