**In the Matter of the Application of Raymond J. DONOVAN for Removal of the State Criminal Proceeding Brought Against Him in Bronx County Entitled:**

**PEOPLE of the State of New York**

v.

**SCHIAVONE CONSTRUCTION COMPANY, Raymond J. Donovan, Ronald A. Schiavone, Richard C. Callaghan, Joseph A. DiCarolis, Morris J. Levin, Albert J. Magrini, Gennaro Liguori, Robert Genuario, Jopel Contracting and Trucking Corporation, Joseph L. Galiber, and William P. Masselli, Defendants.**

No. 84 Civ. 8254 (LFM).

United States District Court,
S.D. New York.

Jan. 16, 1985.

Pierson Ball & Dowd by William O. Bittman, Judith L. Harris and Richard D. Lerner, Washington, D.C. and Kaye, Scholer, Fierman, Hays & Handler by Paul J. Curran and Bruce Margolius, New York City, for petitioner Raymond J. Donovan.

Mario Merola, Dist. Atty., Bronx County by Stephen R. Bookin, Mark L. Freyberg and Jeremy Gutman, Asst. Dist. Attys., New York City, for respondent People of the State of N.Y.

Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, P.C. by Theodore V. Wells, Jr. and Robert L. Krakower, Roseland, N.J., for intervenors Schiavone Const. Co., Ronald A. Schiavone, Richard C. Callaghan, Joseph A. DiCarolis, Morris J. Levin,

Albert J. Magrini, Gennaro Liguori and Robert Genuario.

Julien & Schlesinger, P.C. by Stuart A. Schlesinger, New York City, for intervenor Joseph L. Galiber.

## OPINION

### MacMAHON, District Judge.

Petitioner Raymond J. Donovan, United States Secretary of Labor, seeks removal to this court of a state criminal prosecution pending against him and eleven codefendants [1] under Indictment No. 3571/84, filed on September 24, 1984 in the Supreme Court of the State of New York, Bronx County. Seventy-two counts of the 137-count indictment charge petitioner with the commission of state felonies while serving as Secretary of Labor. On October 1, 1984, petitioner, due to his indictment, took a leave of absence without pay from his cabinet office.

Since it did not appear on the face of the petition that it should be dismissed summarily as insufficient, we held an evidentiary hearing on December 12, 13, 17 and 18, 1984, pursuant to the mandate of 28 U.S.C. § 1446(c)(5).

Invoking the protection of 28 U.S.C. § 1442(a)(1), petitioner asserts that he is entitled to removal on three grounds. [2] First, the indictment, on its face, charges petitioner with acts which he took, or refrained from taking, under color of his federal office. Second, one of his primary defenses arises out of his duties under federal conflict of interest laws. Third, respondent Mario Merola, District Attorney, Bronx County, is wrongfully attempting to interfere with the operations of the federal government.

Respondent opposes the petition, contests petitioner's allegations of fact, and denies any wrongful interference with the federal government. He contends that the indictment, as clarified by a supplemental bill of particulars and the evidence upon the hearing, charges petitioner solely with private acts which have no connection with his federal office, and that the federal conflict of interest laws provide petitioner with no colorable defense. Intervenors, petitioner's codefendants, [3] oppose removal of the prosecution against them, as urged by respondent, if we grant removal of the case against petitioner.

Having observed the witnesses, considered the documents, and heard the arguments of the parties, we now make the following findings of fact and conclusions of law.

## FACTS

Petitioner was employed by Schiavone Construction Company ("SCC") from 1959 until February 1981, and during his later years with SCC served as executive vice president and owned 40% of the company. SCC is a heavy construction company engaged in large projects, such as building bridges, roads, subways, and sewage and water treatment plants. In late 1978, SCC, as part of a joint venture, obtained a contract on a project to construct a portion of a subway line running from Third Avenue and 63rd Street in Manhattan to the East River, known as "the 5–B job." The contract was 80% funded by the Urban Mass Transit Authority ("UMTA") at a fixed price of $186 million.

In 1981, petitioner was nominated for the office of Secretary of Labor. The Senate

---

**1.** Also indicted were Secretary Donovan's former company, Schiavone Construction Company ("SCC"); seven SCC officials or former officials; Jopel Contracting and Trucking Corporation ("Jopel") and its two principal shareholders, William P. Masselli and Joseph L. Galiber. This petition is filed only on behalf of Secretary Donovan.

**2.** Petitioner no longer urges the arguments set forth in Sections III and IV of his Memorandum

of Law in Support of Petition for Removal, *i.e.,* (1) that the acts charged, including the filing of reports, were committed under the authority of a federal agency, and (2) that the acts charged were committed under the authority of federal laws providing for equal rights.

**3.** SCC, Ronald A. Schiavone, Richard C. Callaghan, Joseph A. DiCarolis, Morris J. Levin, Albert J. Magrini, Gennaro Liguori, Robert Genuario, and Joseph L. Galiber.

confirmed petitioner's nomination after holding hearings, and, on February 4, 1981, he was sworn in as Secretary of Labor. As required by applicable federal laws and regulations concerning conflicts of interest, petitioner resigned from all his positions with SCC, its subsidiaries and affiliates, their pension and profit sharing trusts, and the joint venture. Petitioner, however, has retained his stock interest in SCC and its affiliated companies but has placed it in trust. He served as Secretary of Labor from February 4, 1981 until October 1, 1984.

On December 29, 1981, the United States Department of Justice applied to the United States Court of Appeals for the District of Columbia Circuit for the appointment of a Special Prosecutor, pursuant to 28 U.S.C. § 591, to investigate whether petitioner had violated any federal criminal laws. The court designated Leon Silverman, Esq., an experienced and able member of the bar of this court, to investigate allegations of criminal conduct concerning petitioner, SCC, the 5–B job, and Jopel Contracting and Trucking Corporation ("Jopel"). Early in 1982, Mr. Silverman began presenting evidence to a federal grand jury in the Eastern District of New York, and after six months concluded that there was insufficient credible evidence to take any action against petitioner.

On September 24, 1984, the Bronx County grand jury, on the basis of evidence similar to that considered by Mr. Silverman, returned the subject indictment against petitioner and his codefendants. The indictment, on its face, charges petitioner and his codefendants with grand larceny (N.Y. Penal Law § 155.35 (one count)), falsifying business records (N.Y. Penal Law § 175.10 (125 counts)), and offering a false instrument for filing (N.Y. Penal Law § 175.35 (11 counts)), all during the period October 1, 1979 through September 24, 1984.

The indictment, as clarified by the bill of particulars and the evidence upon the hearing, stems from the SCC-New York Transit Authority ("TA") contract for the 5–B job and a related subcontract between SCC and Jopel to haul away excavated materials. The TA contract required that 10% of the $186 million bid price be paid to minority business enterprise ("MBE")[4] subcontractors. Allegedly, before petitioner became Secretary of Labor but continuing thereafter, he and his codefendants, acting in concert, defrauded the TA by falsely representing that Jopel, a sham MBE and the creation of SCC, was a genuine and independent MBE. It is charged that money which appeared to be paid to Jopel and which was allocated falsely to the MBE 10% requirement was actually kept by or passed to SCC. Specifically, it is alleged that an SCC check, payable to Jopel for $200,000 and co-signed by petitioner, evidences an interest-free loan to start Jopel's operations; that SCC financed Jopel's payroll; that Jopel had no responsibility for work in the tunnel and no contact with the workers; that defendants created false business records which purported to reflect Jopel's payment of rent to SCC for Jopel's use of SCC equipment; and that, based on these false records, documents were submitted to the TA and, in turn, to UMTA which falsely reported that Jopel was paid certain amounts of the MBE 10% requirement.

## DISCUSSION

We emphasize at the outset that the sole question before us is whether petitioner has adequate grounds for removal, and we make no findings or conclusions as to any other issue, such as the validity of the indictment,[5] the sufficiency of the evidence

---

4. Executive Order 11,625, reported at 3 C.F.R. 616 (1971), requires that all federal agencies encourage full participation in federal programs by minority business enterprises ("MBE"s). MBEs are defined in the Executive Order as businesses "owned and controlled" by "socially and economically disadvantaged persons."

5. See People v. McGee, 49 N.Y.2d 48, 399 N.E.2d 1177, 424 N.Y.S.2d 157 (1979).

**578**

before the Bronx grand jury, and alleged prosecutorial misconduct.

■ The right of removal under the applicable statute, § 1442(a)(1), is absolute whenever a state criminal prosecution is brought against "any officer of the United States ... for any act under color of such office." In *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), an inmate at a federal penitentiary brought a civil action against the warden and chief medical officer claiming they had assaulted and tortured him. Confronted with an assertion that "they were on a frolic of their own," petitioners countered that their only contact with respondent was in the performance of their official duties as warden and as chief medical officer. Holding that this satisfied the "color of office" requirement, the Supreme Court taught that:

> The federal officer removal statute is not "narrow" or "limited." *Colorado v. Symes*, 286 U.S. 510, 517 [52 S.Ct. 635, 637, 76 L.Ed. 1253] (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts.... In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).

*Id.* at 406–07, 89 S.Ct. at 1815–16.

As we have seen, the indictment here charges petitioner with larceny, falsifying business records, and filing false reports. It does not specify, on its face, any act showing how petitioner stole money or falsified business records or filed false reports. Nor does it in any way limit the allegations to private conduct. Petitioner, like the petitioners in *Willingham*, asserts and has testified that his only contact involving UMTA and the only reports he "made to UMTA since becoming Secretary of Labor were in the course of his official duties." He further testified and introduced documentary evidence showing that, in compliance with the federal conflict of interest laws, he wholly disassociated himself from the business activities of SCC since becoming Secretary of Labor.

Relying on *Willingham*, petitioner asserts that the breadth of the indictment does not limit the acts charged to private conduct, and that, since becoming Secretary of Labor, his only possible connection with the acts charged was in the course of his official duties. Consequently, he concludes that the state prosecution is brought for acts "under color of office." This argument is tenable enough to preclude summary dismissal of the petition and to raise issues requiring a hearing. In light of the evidence upon the hearing, however, petitioner's reliance on *Willingham* is misplaced. *Willingham* was a civil case, and, in holding that the allegations there were sufficient to satisfy the "color of office" requirement, the Court was careful to note that a more detailed showing is necessary in a criminal case before granting removal because of the compelling state interest in conducting state criminal trials in state courts. *Id.* at 409 n. 4, 89 S.Ct. at 1817 n. 4.

■ The supplemental bill of particulars and the evidence upon the hearing make clear that, although 72 counts of the indictment charge petitioner with crimes committed after he became Secretary of Labor, none of the 72 counts charge him with any personal act, either under color of office or otherwise. Rather, all 72 impute the alleged criminal conduct of others to him as a member of a continuing conspiracy which began in 1979. Thus, petitioner is not charged, directly or indirectly, with crimes

based on any act relating to his official duties.

Moreover, the evidence establishes that petitioner's only direct personal involvement with SCC, Jopel and the contract with the TA on the 5–B job arose solely through his affiliation with SCC—an affiliation that pre-dated and was entirely independent of his role as Secretary of Labor. Petitioner himself testified that he has taken no action in his official capacity which in any way affected SCC or any contracts, business transactions, or reports referred to in the indictment.

Petitioner thus has failed to meet his burden of showing that any of the crimes charged against him arose from performance of his official duties, or, indeed, that there is the slightest nexus between his official duties and the charged crimes. On the contrary, the instant indictment, as limited by the bill of particulars [6] and clarified by the evidence upon the hearing, charges petitioner with crimes defined by state law arising solely from unofficial acts.

 Petitioner next contends that he could raise a colorable defense arising out of his duties under federal conflict of interest laws. *Willingham* established that the "color of office" test of § 1442(a)(1) covers "all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Id.* at 406–07, 89 S.Ct. at 1815–16. Petitioner asserts that upon a trial, if the case survived a motion to dismiss at the close of the prosecution's evidence, he would prove that he complied with federal conflict of interest laws and thus necessarily withdrew from the alleged conspiracy. Although evidence of such compliance may well be relevant to a defense of renunciation under N.Y.Penal Law § 40.10,[7] the significance of such evidence would depend upon petitioner's actions, not whether those actions were motivated by a duty to comply with federal laws. It is the fact of withdrawal, not the duty which prompted it, that may constitute a defense to conspiracy. *United States v. Steele*, 685 F.2d 793 (3d Cir.1982); *United States v. Goldberg*, 401 F.2d 644 (2d Cir.1968), *cert. denied*, 393 U.S. 1099, 89 S.Ct. 895, 21 L.Ed.2d 790 (1969). Thus, petitioner's duties to comply with conflict of interest laws do not provide him with a colorable defense arising out of his duty to enforce federal law.

Finally, petitioner alleges that the Bronx District Attorney is hostilely attempting to interfere with the operations of the federal government. *Willingham* teaches that one of the purposes of removal under § 1442(a)(1) is to safeguard the operations of the federal government through its officers and agents against interference by hostile state courts. *Id.* 395 U.S. at 405–06, 89 S.Ct. at 1815. Those operations would be jeopardized if federal officers, acting "within the scope of their authority ... can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess...." *Tennessee v. Davis*, 100 U.S. (10 Otto) 257, 263, 25 L.Ed. 648 (1880), *cited with approval* in *Willingham*, 395 U.S. at 406, 89 S.Ct. at 1815.

**6.** A bill of particulars gives the defendant a more specific definition of the nature and character of the crimes charged to avoid surprise at trial and to enable him to prepare his defense. *People v. Raymond G.*, 54 A.D.2d 596, 387 N.Y. S.2d 174 (3d Dept.1976). The bill of particulars here specifies in detail the charges against petitioner and limits the crimes charged to unofficial acts.

**7.** Petitioner's criminal liability must be determined under the substantive criminal law of New York. *Arizona v. Manypenny*, 451 U.S. 232, 241–42, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58 (1981). Whereas an affirmative act of withdrawal constitutes a complete defense under federal law, *United States v. Steele*, 685 F.2d 793, 803–04 (3d Cir.1982), a defendant seeking to establish the affirmative defense of renunciation under N.Y.Penal Law § 40.10(1) must meet the additional burden of demonstrating that he made a "substantial effort" to prevent the commission of the conspiratorial plan. *People v. Ozarowski*, 38 N.Y.2d 481, 344 N.E.2d 370, 381 N.Y.S.2d 438 (1976). Thus, under the applicable law, petitioner's claims regarding his withdrawal from SCC, if proven, may not constitute a defense at all.

■ Unquestionably, the indictment of a cabinet officer interferes with the administration and operation of the executive branch of the federal government. It strikes such a crippling blow to the officer's effectiveness that it compels his temporary, if not his permanent, removal from office. The longer the indictment remains unresolved, the greater the disruption of the Department of Labor. This creates a strong federal interest in the prompt disposition of the case which would be ensured by removal and a prompt trial mandated by the Speedy Trial Act. That interest, however, is neither a ground for removal under § 1442(a)(1) nor one which overrides the interest of the state in enforcing its criminal laws.

■ Petitioner claims that hostility on the part of the Bronx District Attorney is evidenced by the circumstances surrounding the indictment. He points to the prior federal investigation, based on substantially the same evidence and involving related issues, which concluded that there was insufficient credible evidence to take action against petitioner.[8] Petitioner also claims that the indictment was timed by the Bronx District Attorney to influence a presidential election. He complains also of cursory and unfair treatment when he appeared before the Bronx grand jury and of prejudicial publicity and false characterization of the charges against him by the Bronx District Attorney. These contentions, if established, may have some relevance to other issues in this case, but they are immaterial to the issue of removal.

We recognize that the policy of providing federal officers with the protection of a federal forum "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham,* 395 U.S. at

407, 89 S.Ct. at 1816. It is not our province, however, to expand upon the present statute, and we find that even the most liberal interpretation does not warrant removal here. The doctrines of federalism and comity mandate that federal courts act with restraint with respect to ongoing state criminal prosecutions and interfere with such prosecutions only when necessary to protect overriding federal interests. *Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971). A court considering a removal petition must, therefore, appreciate that misapplication of the removal statute bears severe consequences to the federalist system, for:

> [I]t is axiomatic that the right of the States, consistently with the Constitution and laws of the United States, to make and enforce their own laws is equal to the right of the federal government to exert exclusive and supreme power in the field that by virtue of the Constitution belongs to it. The removal statute under consideration is to be construed with highest regard for such equality. Federal officers and employees are not, merely because they are such, granted immunity from prosecution in state courts for crimes against state law.

*Colorado v. Symes,* 286 U.S. 510, 518, 52 S.Ct. 635, 637, 76 L.Ed. 1253 (1932). *Accord, Dixon v. Georgia Indigent Legal Services, Inc.,* 388 F.Supp. 1156, 1162 (S.D. Ga.1975), *aff'd,* 532 F.2d 1373 (5th Cir. 1976).

The charges confronting petitioner in no way pertain to his performance of official duties; nor do his duties as Secretary of Labor provide any explanation or excuse for the crimes charged. Moreover, petitioner has specifically testified that he took

---

**8.** The mere fact, however, that the present prosecution may be based substantially on the same evidence previously rejected in a federal investigation is no bar to the state's subsequent prosecution charging violations of state laws. This is true even if the prior federal case resulted in an acquittal by a jury. *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). In *Bartkus,* the Supreme Court held that the double jeopardy clause would not bar a state from

prosecuting a defendant for a robbery that had previously been the subject of a federal prosecution. The Court recognized "the historic right and obligation of the States to maintain peace and order within their confines" and therefore declared that "it would be in derogation of our federal system to displace the reserved power of States over state offenses...." *Id.* at 137, 79 S.Ct. at 685.

no action in his official capacity with regard to the subject matter of the indictment. Since this prosecution is not brought against petitioner "for any act under color of such office," we are compelled to conclude that the right of the states to enforce and execute their own laws must be respected.

The foregoing opinion constitutes this court's findings of fact and conclusions of law, in accordance with Rule 52, Fed.R. Civ.P.

Accordingly, the petition for removal is denied. This disposition moots the issue of removal as to the intervenors.

So ordered.