792 F.2d 1447
 Scott SWETT, Plaintiff-Appellant,
v.
George SCHENK, acting as the personal representative of the
estate of Harris Tallakson, deceased; Sabre Industries,
Inc.; Cessna Aircraft Company; and Does 1 through 5 and
Does 7 through 50, Defendants-Appellees.
 No. 85-5592.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1985.
Decided June 30, 1986.
 
 Ned Good, Good & Novack, Pasadena, Cal., for plaintiff-appellant.
 James R. Sullivan, Asst. U.S. Atty., William T. Delhagen, Kirtland & Packard, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON and NORRIS, Circuit Judges, and COPPLE,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Scott Swett ("appellant") appeals from a United States District Court order dismissing a contempt action against an investigator of the National Transportation Safety Board ("NTSB"). Appellant argues that removal of the action from the California Superior Court was improper and that the contempt finding should not have been dismissed. We affirm.
 
 I. BACKGROUND
 
 2
 A single-engine plane crashed on July 9, 1980, killing all four persons on board, including appellant's parents. The NTSB conducted an investigation of the crash. Appellant brought an action for wrongful death in the Superior Court of California, seeking damages from the pilot's estate and Cessna Aircraft Company.
 
 
 3
 Appellant sought to depose the NTSB investigator who conducted the investigation of the crash, one Llorente, by gaining the permission of the NTSB as provided in 49 C.F.R. Sec. 835.6(a). At the deposition, appellant asked Llorente to repeat certain conversations that took place, during the course of the investigation, between himself and an investigator from defendant Cessna. In these conversations, the Cessna investigator may have expressed an opinion as to the cause of the accident. Under orders from the NTSB Chairman, and relying on 49 C.F.R. Sec. 835.3(b), Llorente refused to answer these questions. Section 835.3(b) forbids NTSB employees from testifying as to their opinions regarding accidents, but allows testimony as to all factual information obtained during an investigation. Appellant challenged Llorente's refusal, arguing that the questions solicited only factual matters. The Superior Court agreed and ordered Llorente to answer.
 
 
 4
 The government removed the case immediately to the United States District Court. The district court remanded the case back to the state court, however, because it found that Llorente and the NTSB were not parties to the underlying action and, therefore, removal was improper.
 
 
 5
 On remand, appellant continued with his questions and Llorente continued his refusal to answer. The state court found Llorente in civil contempt and sentenced him to jail until he answered, but first released him for 60 days on his own recognizance. In response, the government removed the case for the second time to the United States District Court.[1]
 
 
 6
 The district court expressed concern that the contempt action was not identified by a caption separate from the underlying wrongful death action. The district court stated its intention to remand to the state court, where the contempt action could be denominated with a separate caption, after which time the contempt action could be removed separately. Before a remand order to this effect was signed, however, the state court issued a bench warrant for Llorente's arrest.
 
 
 7
 In response, the government filed with the district court an ex parte application to stay the remand until the district court could consider a motion for reconsideration. The district court granted the stay, and sua sponte enjoined the state court from enforcing contempt sanctions. Thereafter, on motion for reconsideration, the district court dismissed the state court's contempt action against Llorente and remanded the rest of the action. Before this court, appellant challenges both the grant of the removal petition and the dismissal of the contempt action.
 
 II. DISCUSSION
 
 8
 The questions presented on this appeal are questions of law which we review under the de novo standard of review. See United States v. McConney, 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 A. Removal To The Federal Court
 
 9
 The Federal officer removal statute, 28 U.S.C. Sec. 1442, provides in pertinent part:
 
 
 10
 "(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
 
 
 11
 (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office ..."
 
 
 12
 28 U.S.C. Sec. 1442(a)(1).
 
 
 13
 The long-standing purpose of this removal statute is "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." Arizona v. Manypenny, 451 U.S. 232, 241, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58, 68 (1981) (footnote omitted). The Supreme Court "has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of Sec. 1442(a)(1).' " Id., 451 U.S. at 242, 101 S.Ct. at 1664, 68 L.Ed.2d at 69 (citing Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813, 1816, 23 L.Ed.2d 396 (1969)). Against this backdrop, we consider appellant's claims that removal was improper in this case.
 
 
 14
 Appellant argues that removal based on section 1442(a)(1) was error because, under the "color of office" test, there is no causal connection present at bar between the charged conduct and the asserted official authority. This is so, argues appellant, because Llorente was asked only factual questions which he is required to answer under 49 C.F.R. Sec. 835.3(b). Consequently, continues appellant, Llorente was not enforcing federal laws, and the case cannot be removed. We reject this narrow view.
 
 
 15
 It is undisputed that when Llorente declined to answer the questions, he did so pursuant to orders from the Chairman of the NTSB. It is also beyond argument that the Chairman based these directions not to answer on section 835.3(b)'s proscription against divulging opinions. This is all the causal connection that is required. The removal statute is, at the very least, "broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." Willingham v. Morgan, 395 U.S. 402, 406-407, 89 S.Ct. 1813, 1815-1816, 23 L.Ed.2d 396, 401 (1969) (emphasis added). Llorente has raised a colorable defense. He need not win his case before he can have it removed. "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court.... In cases like this one, Congress has decided that federal officers ... require the protection of a federal forum." Id.; See State of Utah, etc. v. IWY Coordinating Committee, etc., 454 F.Supp. 518, 520 (D.Utah 1978).
 
 
 16
 Appellant also argues that the government did not have standing to remove the entire case and, therefore, should have removed only the contempt order. As noted previously, the district court was concerned about the fact that the contempt order was not distinct from the wrongful death action, and wanted the state court to separate the two actions by the use of different captions so that the contempt proceeding could be neatly removed. The state court's issuance of the bench warrant, however, necessitated removing the entire action.
 
 
 17
 It is clear that a contempt action against a federal official for failure to comply with a state court order, although ancillary to the underlying state action, is a distinct action which may be removed. State of Wisconsin v. Schaffer, 565 F.2d 961, 964 (7th Cir.1977). It is otherwise well settled, "that a federal court does have the power to hear claims that would not be independently removable even after the basis for removal jurisdiction is dropped from the proceedings." Watkins v. Grover, 508 F.2d 920, 921 (9th Cir.1974); Murphy v. Kodz, 351 F.2d 163, 167 (9th Cir.1965). Further, it is within the district court's discretion, once the basis for removal jurisdiction is dropped, whether to hear the rest of the action or remand it to the state court from which it was removed. Watkins, 508 F.2d at 921. It follows logically that it was permissible for the district court to remove the entire case initially, particularly in light of the circumstances, and to then exercise its discretion to remand the pending wrongful death action to the state court. See IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc., 676 F.2d 152, 158-159 (5th Cir.1982); National Audubon Soc. v. Department of Water, etc., 496 F.Supp 499, 509 (E.D.Cal.1980); 1A Moore's Federal Practice p 0.164 (2d ed. 1985).
 
 
 18
 Finally, appellant argues that the government waived its right of removal by consenting to Llorente's deposition. This argument is wrong for two reasons. 49 C.F.R. Sec. 835.6(b) provides that, in permitting an investigator to testify, the NTSB should condition that testimony in order that it "will be limited to the matters delineated in Sec. 835.3 ..." It is clear from this provision that consent to a deposition is not a blanket waiver of objection to the substance of the inquiries. Furthermore, Llorente was not a defendant until he was ordered by the state court to testify against his wishes, at which time he promptly petitioned for removal. Until this order to testify, there was no basis for removal under Sec. 1442(a). We conclude that the district court's removal of this action was correct.
 
 B. Dismissal of the Contempt Action
 
 19
 After deciding, upon reconsideration, to grant the petition for removal, the district court dismissed the contempt action against Llorente based on the doctrine of United States ex. rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). In Touhy, the Supreme Court held that subordinate federal officers could not be held in contempt for failing to comply with a court order in reliance on a validly promulgated regulation to the contrary. Id., 340 U.S. at 469, 71 S.Ct. at 419, 95 L.Ed. at 422. Consequently, the district court held that the state court had no jurisdiction to hold Llorente in contempt, and since removal jurisdiction is derivative, the district court acquired no jurisdiction on removal.
 
 
 20
 Touhy was controlled by Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900). This court reached the same conclusion on this issue, citing Boske, in Ex parte Sackett, 74 F.2d 922 (9th Cir.1935). In Sackett, a trial court held a Department of Justice investigator in contempt for failure to answer questions and produce records. The investigator's refusal was based on a rule promulgated by the Attorney General. We held that "[t]his regulation has the force of law, and the court had no jurisdiction or power to punish an officer for conforming to that law." Id. at 923.
 
 
 21
 There can be no doubt that the regulation relied on by Llorente and the NTSB Chairman, 49 C.F.R. Sec. 835.3, is validly promulgated and has the force of law. 49 C.F.R. Part 835 was promulgated, pursuant to 49 U.S.C. Sec. 1903(b)(10), in order to prescribe the policies and procedures regarding the testimony of NTSB employees. Subsection (a) states that:
 
 
 22
 "[s]ection 701(e) of the F[ederal] A[viation] Act [49 U.S.C. Sec. 1441(e) ] and section 304(c) of the [Independent] Safety [Board] Act [49 U.S.C. Sec. 1903(c) ] preclude the use or admission into evidence of Board accident reports in any suit or action for damages arising from accidents. The purpose of these sections would be defeated if expert opinion testimony of Board employees, which is reflected in the ultimate views of the Board expressed in its report concerning the cause of an accident, were admitted in evidence or used in private litigation arising out of an accident ..."
 
 
 23
 49 C.F.R. Sec. 835.3(a) (1984). Because the regulation is valid, the district court was correct in holding that the state court lacked jurisdiction to use contempt procedures against Llorente.
 
 
 24
 Appellant strenuously argues that Sec. 835.3(b) does not protect the testimony in question because only factual matter, not the forbidden opinion, was sought. On the other side, the government essentially argues that the expert opinions of NTSB investigators are dependent upon, and somewhat reflected within, the opinions expressed by individuals that the investigator interviews during an investigation. Admittedly, the government is motivated by a desire to avoid a chilling of this exchange of opinions.
 
 
 25
 We understand the appellant's frustration with the situation. He has yet to have a federal court apply this federal regulation to the facts and arguments of his case. In addition, his fact versus opinion argument has logical appeal. The state court obviously agreed, for it squarely ruled in appellant's favor. Nevertheless, the Touhy doctrine is jurisdictional and precludes a contempt action regardless of whether section 835.3(b) is ultimately determined to protect the requested testimony. Consequently, a consideration of the merits can play no part in our decision.[2]
 
 
 26
 Appellant further argues that the government waived the defense of immunity by consenting to the deposition and submitting Llorente to the jurisdiction of the state court. We disagree. As stated previously, the NTSB's act of permitting Llorente to testify in accordance with the regulations contained in 49 C.F.R. Part 835, which are set out to safeguard the policies behind the Federal Aviation Act and the Independent Safety Board Act, cannot be construed as an intent to waive immunity.
 
 
 27
 We must also reject appellant's contention that the district court erred in not enforcing the state court order as a matter of comity and full faith and credit. These doctrines do not apply since the state court lacked jurisdiction to enter its order in the first instance. See Giza v. Secretary of Health, Ed. & Welfare, 628 F.2d 748, 752 (1st Cir.1980); Reynolds Metals Co. v. Crowther, 572 F.Supp. 288, 291 (D.Mass.1982).
 
 
 28
 Accordingly, for the reasoning expressed in this opinion, the judgment of the district court is
 
 
 29
 AFFIRMED.
 
 NORRIS, Circuit Judge, dissenting:
 
 30
 I disagree with the majority that this case is controlled by Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), because I believe that the disclosure regulation upon which investigator Llorente relied waived his immunity from testimonial compulsion with respect to matters of fact. Accordingly, although I agree that the contempt action was removable under 28 U.S.C. Sec. 1442(a)(1), I disagree that sovereign immunity deprived the state court of jurisdiction to compel fact testimony consistent with the regulation or that, as a consequence, the district court on removal lacked derivative jurisdiction to adjudicate the merits of the contempt. The district court should be required to decide on remand which, if any, questions Llorente was required to answer because they called for factual testimony within the meaning of 49 C.F.R. Sec. 835.3(b) (1984).
 
 
 31
 In Touhy, the regulation upon which the federal agent based his refusal to produce subpoenaed documents left the decision whether to permit or forbid production to the discretion of his superior officer. Ex Parte Sackett, 74 F.2d 922 (9th Cir.1935), the circuit precedent on which the majority also relies, involved a regulation that categorically prohibited disclosure of confidential public materials for use in private litigation. See also Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900) (disclosure permitted only at the direction of the department head); United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (same). Here, to the contrary, 8 C.F.R. Sec. 835.3 embodies an explicit, particularized standard binding on NTSB investigators once, as happened here, they receive the Board's conditional authorization pursuant to 49 C.F.R. Sec. 835.6(a) to testify in private litigation. The Board's authorization is conditional because section 835.3 permits investigators to testify "as to the factual information they obtained during the course of the accident investigation" but prohibits testimony exceeding "the scope of their investigation" and "opinion testimony concerning the cause of the accident." 8 C.F.R. Sec. 835.3(b). Accordingly, whereas Touhy involved a nondisclosure regulation that reserved complete discretion to the Attorney General, the NTSB regulation prescribes a determinate, uniform standard for the guidance of litigants, Board personnel and the courts.[1] Because the distinction is critical to the question of whether the regulation constituted a partial waiver of sovereign immunity, I believe the majority is incorrect in holding that this case is controlled by Touhy.
 
 
 32
 Although I appreciate the Hobson's choice into which Llorente was boxed by the chairman's letter, the state court was entitled to enforce the regulation, rather than defer to the letter. If the state court misinterpreted the regulation, Llorente's remedy was to invoke his right of immediate removal to a federal forum to correct the error. Now that he has exercised this remedy, the district court should assume jurisdiction and address the merits.
 
 
 
 *
 The Honorable William P. Copple, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 When the action was removed the first time, it was presided over by The Honorable Lawrence T. Lydick. The second removal, which is at issue here, was presided over by The Honorable Terry J. Hatter
 
 
 [2]
 We note, without expressing opinion, that the proper method for challenging NTSB's interpretation of section 835.3(b) and the refusal to testify would seem to be in a direct action against the NTSB pursuant to either 49 U.S.C. Sec. 1903(d) or 5 U.S.C. Sec. 702
 
 
 [1]
 Nor is the prescriptive nature of the NTSB regulation changed by the Board chairman's attempt to supplement it with a specific ad hoc directive to Llorente forbidding him from testifying to the "informal analytical conversations" he held with the manufacturer's representative at the accident site. In Touhy, the Attorney General's specific directive not to disclose the subpoenaed documents was consistent with the regulation, which contemplated that the department head would give or withhold consent every time that the Department of Justice received a request for documents in its possession. Here, the regulation vested no such right of ad hoc consent in the NTSB chairman but provided that, once the General Counsel granted a private party's request for deposition testimony, the deposition should go forward with respect to matters of fact. When the NTSB granted the plaintiff's request to depose Llorente, it forfeited its one chance to obviate delicate disclosures by preempting deposition testimony. Thereafter, the Board had to rely on either the state court's or the removal court's faithful interpretation of the fact/opinion dichotomy embodied in its validly promulgated regulations