William Earl **MALSCH** and Andrew Stuart Leyda **Plaintiffs**

v.

**VERTEX AEROSPACE, LLC,** Vertex **Aerospace, Inc., Raytheon Aerospace Company, Raytheon Company, Veritas Capital Management, LLC, Veritas Capital, Inc., L–3 Communications Aerotech, LLC., L–3 Communications Integrated Systems, L.P., Directly and**

as Successor in Interest to Raytheon Airport Integrated Systems, L–3 AIS GP Corporation, L–3 Communications Corporation, Camber Corporation and Bell Helicopter Textron, Inc. Defendants

No. CIV.A.3:04 CV 463 LN.

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 13, 2005.

Philip Williams Thomas, Jackson, MS, for Plaintiffs.

James J. Goodman (PHV), Jr., Balch & Bingham, LLP, Birmingham, Al, Tara P. Ellis, Balch & Bingham, LLP, David C. Dunbar, Dunbar Monroe, PLLC, Jackson, MS, Jack F. Dunbar, Holcomb Dunbar, P.A., Oxford, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiffs William Earl Malsch and Andrew Stuart Leyda to remand. Defendant Bell Helicopter Textron, Inc. (Bell) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is not well taken and should be denied.

Plaintiffs herein brought this product liability suit in the Circuit Court of Madison County seeking to recover damages for injuries they sustained in a February 14, 2002 crash of a United States Marine Corps UH–1N helicopter manufactured by Bell Helicopters. According to the complaint, plaintiffs and fellow members of the Marine Medium Helicopter Squadron 166 Reinforced were concluding a night vision device training mission when the crash occurred as a result of the helicopter's vertical stabilizer "depart[ing] the airframe causing an immediate and complete loss of aircraft controllability." Plaintiffs allege that the crash occurred "as a result of the defective manufacturing, designing, draft-

ing of manuals and warnings, assembling, compounding, testing, inspecting, fabricating, constructing, analyzing, distributing, servicing, selling and other failures relating to the Accident Helicopter, its component parts, and the associated manuals, instructions and warnings...."

Bell removed the case under 28 U.S.C. § 1442, the federal officer removal statute. Section 1442(a)(1) provides that "[a]ny officer of the United States ... or person acting under him, sued for any act under color of such office" may remove a pending state action to a district court of the United States.[1] Bell, as the defendant seeking federal officer removal, must satisfy a two-part test. First, it must raise a colorable federal defense to plaintiffs' claims, *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 2075, 144 L.Ed.2d 408 (1999) (citing *Mesa v. California*, 489 U.S. 121, 139, 109 S.Ct. 959, 970, 103 L.Ed.2d 99 (1989)), and it must "establish that the suit is '*for* a[n] act under color of office,' 28 U.S.C. § 1442(a)(3)," *id.* (emphasis added). "To satisfy the latter requirement, the officer must show a nexus, a 'causal connection' between the charged conduct and asserted official authority." *Id.* (quoting *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)).

█ In response to plaintiffs' allegations, Bell has asserted a federal defense, namely, the government contractor defense, pursuant to which liability for design defects in military equipment cannot be imposed on governmental contractors when

(1) the United States approved reasonably precise specifications;

(2) the equipment conformed to those specifications; and

(3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). This defense, which was established in *Boyle*, exists as a counterpart to the United States' immunity for discretionary functions, and stems from the recognition that "'[i]t makes little sense to insulate the Government against financial liability for the [discretionary decision] that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.'" *Bragg v. United States*, 55 F.Supp.2d 575, 587 (S.D.Miss.1999) (quoting *Boyle*, 487 U.S. at 511–12, 108 S.Ct. at 2518). "Thus, '[t]he rationale behind the defense is that, in its absence, the financial burden of liability judgments against government contractors ultimately would be passed through to the United States.'" *Id.* (quoting *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 798 (5th Cir.1993)). Thus, the first two of the three conditions to successful invocation of the defense exist to "assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated—i.e., they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself." *Id.* (quoting *Bailey* ). "The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." *Id.*

---

1. It is now settled that the statute's reference to "person" includes companies. *See Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir.1998) ( corporate entities qualify as 'persons' under § 1442(a)(1)) (citation omitted).

As this court explained in *Bragg*, the Fifth Circuit has held that what is ultimately determinative of the applicability of the government contractor defense in a given case is whether the "design choice" that is at issue was the contractor's choice or the government's choice, for only in the latter case is the government's discretion implicated. *Bragg*, 55 F.Supp.2d at 587 (citing *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir.1989)).

> If the Government delegated to the contractor the discretion to choose the design, without specific direction and/or without substantive review of the design, the discretion is the contractor's and the defense does not apply. Moreover, the defense protects government contractors from liability for design defects only where "discretion over the *design feature in question* was exercised by the government." [*Trevino*, 865 F.2d] at 1486 (emphasis added). *See also Bailey*, 989 F.2d at 799 ("[T]he requirements of 'reasonably precise specifications' and conformity with them refer to the particular feature of the product claimed to be defective.").

*Bragg*, 55 F.Supp.2d at 587.

█ In its removal notice, Bell submits that because it manufactured the accident helicopter pursuant to its contract with the United States Government and in accordance with reasonably precise specifications created by the government, it is immune from all liability in this matter under the government contractor defense. Perhaps more pertinently for present purposes, Bell maintains that it has at least asserted a colorable federal government contractor defense. In support of its assertion of this defense as a basis for removal, Bell has produced the affidavit of W.T. Wilson, who was employed as Bell's Director of Helicopter Contracts for more than thirty-two years prior to his retirement in 2001.[2] In that affidavit, Wilson details the history which led to the design and manufacture of the UH–1N helicopter for the United States military, describes a specifications and design review and approval process involving extensive government input, direction and oversight, and ultimately declares as follows:

> [I]n accordance with Government contract requirements, the Government was directly and intimately involved with development and controlled the design of every aspect of the helicopter, including without limitation the types of materials used in the helicopters and their component parties. Government representatives closely monitored Bell's work at every step in the design process, and Government evaluation and approval had to occur at every step. Bell had little or no leeway in determining the required design of the helicopters, including the required materials for the component parts and their painting and marking.

> [I]n all aspects of the design and production of the subject UH–1N helicopter, ... Bell was required by virtue of contracts drafted by the United States Government and signed by Bell to adhere strictly to the detailed specification, military standards, technical orders, technical instructions or publications, engineering drawings, and other specific requirements which were reviewed in

---

**2.** Citing Rule 6(d) of the Federal Rules of Civil Procedure, plaintiffs argue in their motion to remand that because Bell failed to include documentation supporting its position with its notice of removal, Bell has waived the right to submit such evidence. There is no merit to this argument. Rule 6(d) is by its terms applicable to motions; *see* Fed. R. Civ. Proc. ("When a motion is supported by affidavit, the affidavit shall be served with the motion."). A "notice" of removal is not a motion seeking relief but rather a "notice" advising the court and plaintiffs that the case is being removed.

great detail and approved in writing by United States military and civilian personnel with expertise in their respective fields. Thus, every step of the design and production process was specified or expressly mandated by the government contract, as well as by the military standards and other specifications incorporated.

In the court's opinion, although Wilson's affidavit does not explicitly refer to any specific parts or components of the helicopter which plaintiffs now claim were defectively designed and led to the crash, the affidavit nevertheless fully supports a conclusion that Bell has asserted a "colorable federal defense," and that the requisite "causal nexus" exists between plaintiffs' claims as alleged in the complaint and acts Bell asserts it performed "under color of federal office" in view of his declaration that the Government "controlled the design of every aspect of the helicopter."[3]

In so concluding, the court would emphasize that the issue presented on this motion to remand is not whether or not Bell's proffered federal defense is meritorious but rather whether it is at least "colorable," obviously a much lower threshold. Indeed, the Supreme Court has made it clear that

> [t]he federal officer removal statute is not "narrow" or "limited." *Colorado v.*

*Symes,* 286 U.S. 510, 517 [52 S.Ct. 635, 637, 76 L.Ed. 1253] (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts. The position of the court below would have the anomalous result of allowing removal only when the officers had a clearly sustainable defense. The suit would be removed only to be dismissed. Congress certainly meant more than this when it chose the words "under color of . . . office." In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum.

*Willingham,* 395 U.S. 402, 406–07, 89 S.Ct. at 1816, 23 L.Ed.2d 396.[4]

Because the court concludes that Bell has sustained its burden to demonstrate the propriety of removal, it is ordered that plaintiffs' motion to remand is denied.[5]

---

3. The court notes that in their rebuttal brief, plaintiffs assert that their action against Bell "arises in significant part from its acts and omissions related to (a post-delivery) tail system modification," which they submit "was initiated and developed by Bell and then offered to the U.S. military." Plaintiffs' complaint, however, makes no reference to such modification, and instead alleges that the accident occurred "as a result of the defective manufacturing, designing, drafting of manuals and warnings, assembling, compounding, testing, inspecting, fabricating, constructing, analyzing, distributing, servicing, selling and other failures relating to *the Accident Helicopter,* its component parts, and the associated manuals." (Emphasis added). The court thus finds the requisite "causal nexus" between Bell's assertion of the government contractor defense and the claims alleged in the complaint.

4. It obviously follows that the court's mere conclusion that Bell has presented a colorable federal defense which supports its removal of the case is by no means an adjudication of, or an expression of the court's opinion, as to the merit or probable merit of the defense.

5. The court also concludes that plaintiffs' motion to strike Bell's surebuttal is denied.

The court observes that there is pending in this cause a motion by defendant Veritas Capital, L.L.C. and Veritas Capital, Inc. to dismiss the case on the basis of forum non conveniens, or to dismiss the claims against them for lack of personal jurisdiction. Plaintiffs requested that the deadline for responding to that motion be suspended until a ruling was made on the motion to remand. As the court has now ruled on the remand motion, the motion to suspend deadlines is moot. It is therefore ordered that any response to the Veritas motion to dismiss shall be filed on or before January 28, 2005, with any rebuttal to be dues within five days thereafter.